**MARINE MIDLAND BANK, Plaintiff,**

v.

**James W. MILLER, Defendant.**

**No. 80 Civ. 2952 (KTD).**

United States District Court,
S. D. New York.

March 5, 1981.

Sullivan & Cromwell, New York City, for plaintiff; John Dickey and D. Stuart Meiklejohn, New York City, of counsel.

Olshan, Grundman & Frome, New York City, for defendant; Richard H. Abelson and Peter S. Schram, New York City, of counsel.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Marine Midland Bank [hereinafter "the Bank"] complains that it made

loans, which are now in default, to a coal mining project on the basis of erroneous representations made by Mr. James Miller. Mr. Miller is the president of a West Virginia coal consulting firm called J. W. Miller and Associates, Inc. [hereinafter "Miller Associates"]. The Bank alleges that Mr. Miller was grossly negligent in making the statements and, thus, should be held personally liable for the losses incurred on the loans by the Bank.

Mr. Miller now moves to dismiss this action for lack of personal jurisdiction. Plaintiff opposes this motion on the ground that New York has personal jurisdiction over Mr. Miller under two separate provisions of the New York long-arm statute, N.Y.Civ. Prac.Law § 302(a) (McKinney 1980). Plaintiff urges that Miller committed a tortious act in New York, within the meaning of C.P.L.R. § 302(a)(2), and transacted business in New York out of which this action arises, within the meaning of C.P.L.R. § 302(a)(1).[1]

Defendant Miller challenges these bases of jurisdiction arguing that none of his acts can form the predicate for jurisdiction over him as an individual because he acted only as an agent for a corporation.[2]

For the reasons that follow, I hold that the court does not have personal jurisdiction over Mr. Miller and hereby dismiss the complaint against him.

### I. *Facts*

In 1977, a group of investors tried to borrow approximately $6 million from the Bank to develop a coal mine in Utah. As a principal part of their presentation to the Bank, the investors submitted a feasibility study of the proposed coal mining project prepared by the Miller Associates. The report stated that the Utah property would yield nearly 27 million tons of commercially acceptable coal and that a profitable strip mine could be operated there. This conclusion was confirmed by another expert coal consultant, Keplinger & Associates, Inc. [hereinafter "Keplinger"], which the Bank hired to evaluate the Miller Associates' report.

The report prepared by the Miller Associates was presented to the Bank at meetings in the Bank's offices in New York by defendant James Miller, the president of Miller Associates. Mr. Miller also made oral statements to the Bank to the effect that there were 32 million tons of coal in place, with nearly 27 million tons of recoverable coal which could be sold at a profit sufficient to make the project economically viable.

On the basis of all the information it received, the Bank agreed to loan the investors $6 million to finance the coal mines. During the following year, the Bank actually lent more than $8 million to the project due to cost overruns at the mine. During this time, Keplinger reported regularly to the Bank about the status of the project.

In the fall of 1978, questions were raised about the original estimates of coal reserves. Keplinger reported in March, 1979, that the reserves were actually much smaller and of poorer quality than it and Miller Associates had originally represented to Marine Midland. Virtually no coal can be economically mined and sold.

---

1. C.P.L.R. § 302(a) states in relevant part:

 (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or (Chngd. eff. 9/1/79; L.1979, chap. 252.)

 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;

2. Plaintiff also argues that the alleged acts, even if proven, do not constitute a "tortious act within the state." It is clear, however, that plaintiff's allegations of commercial misrepresentations and its reliance to its detriment on those misrepresentations, if true, are sufficient to state a claim of tortious activity. *See Marine Midland Bank v. Keplinger & Associates*, 488 F.Supp. 699, 703 (S.D.N.Y.1980). *See also Lehigh Valley Industries, Inc. v. Birnbaum*, 389 F.Supp. 798, 804 (S.D.N.Y.), *aff'd, Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975).

On May 22, 1980, the Bank commenced suit against Mr. James W. Miller.[3]

## II. *Discussion*

 It is the rule in New York and in this circuit that long-arm jurisdiction over a person in his individual capacity cannot be based on acts performed by that person in his corporate capacity. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir. 1975); *Grove Press, Inc. v. Central Intelligence Agency*, 483 F.Supp. 132, 135 (S.D.N.Y.1980). This rule applies to tortious acts committed by corporate officers on behalf of the corporation, as well as to acts which constitute "transacting business" for a corporation within the meaning of C.P.L.R. § 302(a)(1).

The issue, then, is in what capacity did Mr. Miller perform the allegedly tortious acts or business transactions.

 It is evident that all acts performed by Mr. Miller were done in furtherance of the corporate business of Miller Associates. The actual preparation of the report was done, not by Miller personally, but by Miller and five other associates. In presenting the report to the Bank, Mr. Miller merely reiterated the representations made in the Miller Associates' report. Finally, payment for the report and related work was made to Miller Associates, not Miller individually. Miller received no benefits, other than his salary as a member of Miller Associates, for his contribution to the report.

In an attempt to establish that Miller was acting on his own behalf rather than that of a corporation, plaintiff alleges that Miller Associates is merely a shell and urges this court to ascribe the actions taken on behalf of the corporation to Miller personally.

The courts in New York are reluctant to disregard the corporate entity and will do so only where the privilege of incorporation has been abused, and a strong showing is made that corporate immunity should be ignored to prevent fraud or achieve equity. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).

 In this case, plaintiff failed to meet its burden of alleging facts sufficient to show that the Miller Associates' corporate entity should be disregarded. While the plaintiff alleges that Miller Associates is undercapitalized, that Miller is chief officer and shareholder of Miller Associates[4] and that Miller represented other companies with the same parent as Miller Associates, it is clear that these facts alone are insufficient under New York law to warrant piercing the corporate veil. *Id.* Plaintiff must allege with sufficient particularity that the defendant has so dominated the corporation that it has no will or existence of its own, but is merely an agent of the defendant. At the very least, there is no evidence that Miller was using Miller Associates for purely personal rather than corporate ends. *See id.* 276 N.Y.S.2d at 588, 223 N.E.2d 6. Since there has been no such showing, I must assume that Miller Associates is a separate entity and conclude that actions taken by Miller were performed solely as an officer and employee of Miller Associates.

Accordingly, Miller is not subject to New York's long-arm statute in his individual capacity and the complaint is dismissed.

SO ORDERED.

---

**3.** Plaintiff instituted suit against Keplinger & Associates, Inc. and J. W. Miller, Inc. in August, 1979. *See Marine Midland Bank v. Keplinger & Associates, Inc. and J. W. Miller, Inc.*, 488 F.Supp. 699 (S.D.N.Y.1980).

**4.** Miller alleges that at all times relevant to the instant action he was not a shareholder of Miller Associates. According to Miller, Miller Associates was a wholly-owned subsidiary of Maryland Coal and Coke Company, of which Miller owned 33⅓ percent of the stock.