MARINE MIDLAND BANK, N.A.,
Plaintiff-Appellant,

v.

James W. MILLER, Defendant-Appellee.

No. 1522, Docket 81–7250.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1981.

Decided Nov. 20, 1981.

D. Stuart Meiklejohn, (John Dickey, Mark McCall, Sullivan & Cromwell, New York City on the brief), for plaintiff-appellant.

Richard H. Abelson (Peter S. Schram, Olshan, Grundman & Frome, New York City on the brief), for defendant-appellee.

Before MESKILL and KEARSE, Circuit Judges, and MARKEY, Chief Judge.*

* Honorable Howard T. Markey, of the United States Court of Customs and Patent Appeals,

KEARSE, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Southern District of New York dismissing this diversity action for lack of personal jurisdiction over the defendant. Plaintiff Marine Midland Bank, N.A. ("Marine Midland") sued defendant James W. Miller, a nondomiciliary of New York, to recover damages resulting from Miller's alleged grossly negligent misrepresentations. The district court ruled that because Miller's acts in New York were performed solely in his capacity as Chief Executive Officer of J.W. Miller & Associates ("Miller & Associates"), his actions were insufficient to permit the court to exercise jurisdiction over Miller in his individual capacity under New York's long-arm statute, N.Y. Civ.Prac. Law & R. ("CPLR") § 302(a) (McKinney 1972 & Supp. 1980). For the reasons below, we reverse and remand.

## Background

In 1977, a group of investors, subsequently known as Atlas-Dirty Devil Mining ("ADDM"), sought to borrow approximately $6 million from Marine Midland in order to finance a planned coal mining project. ADDM submitted to Marine Midland a feasibility report prepared by Miller & Associates, a coal consulting firm incorporated under the laws of West Virginia (the "Miller Report"). The Miller Report stated that the proposed mine would yield nearly twenty-seven million tons of coal of commercially acceptable quality. Thereafter, Miller, the president of Miller & Associates and a resident of West Virginia, made at least two visits to Marine Midland's offices in New York, where he presented and confirmed orally the findings and conclusions of the Miller Report. Marine Midland retained a second coal consulting firm, Keplinger & Associates, Inc. ("Keplinger") to evaluate the Miller Report. Keplinger confirmed the conclusions of Miller & Associates. After receiving all of this information, Marine Midland agreed to lend ADDM

sitting by designation.

approximately $6 million. This amount was subsequently increased to more than $9 million.

In March 1979, Keplinger informed Marine Midland that the Miller Report and the Keplinger confirmation had overstated both the quality and the quantity of ADDM's coal resources. In fact, almost no coal could economically be mined by ADDM. Consequently, ADDM was unable to repay the funds it borrowed from Marine Midland and it has filed a petition under Chapter XI of the Bankruptcy Act.

In May 1980, Marine Midland filed the present suit against Miller,[1] alleging that Miller had been grossly negligent in making false statements to the bank while at its offices in New York. In addition, it alleged that Miller was responsible for the false statements contained in the Miller Report because he had participated in its preparation, because he had presented the report to the bank, and because Miller & Associates was merely a shell that was in actuality Miller's "alter ego."

Miller moved, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint for lack of personal jurisdiction. In opposition to Miller's motion Marine Midland presented deposition testimony by Miller and several affidavits to support, *inter alia*, its contention that Miller & Associates was merely a shell for Miller personally. The affidavits described a certain fluidity of the lines of demarcation between Miller & Associates and other business entities wholly owned by Miller, with respect to contract formation and performance, services and billing, and so forth. In addition, one affidavit cited Miller's counsel as having stated, in his position as counsel for Miller & Associates in Marine Midland's suit against that entity (*see* note 1 *supra*), that Miller & Associates had a net worth of just $30,000 and was in

effect nothing more than a telephone number and stationery.

### The District Court's Decision

The district court granted Miller's motion to dismiss the action for lack of jurisdiction.[2] Recognizing that the law of the forum state governs the exercise of personal jurisdiction in a diversity case in federal court, *Braman v. Mary Hitchcock Hospital*, 631 F.2d 6 (2d Cir. 1980); *Arrowsmith v. UPI*, 320 F.2d 219 (2d Cir. 1963) (en banc), the court, in an opinion reported at 512 F.Supp. 602, sought to resolve the jurisdictional issue by looking to New York's long-arm statute, CPLR § 302(a). Section 302(a) provides in relevant part as follows:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; ...

In construing these provisions, the district court distinguished between activities undertaken by a person in his individual capacity and those undertaken in his role as a corporate employee, and applied what has come to be known as the "fiduciary shield" doctrine, *see, e. g., United States v. Montreal Trust Co.*, 358 F.2d 239, 243 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), which holds that acts performed by a person in his capacity as a corporate fiduciary may not form the predicate for the exercise of jurisdiction over him in his individual capacity. 512 F.Supp. at 604. On the basis of the affidavits and

---

1. In a separate action commenced in August 1979, Marine Midland sued Keplinger and Miller & Associates in the Southern District of New York. Keplinger moved to dismiss for lack of jurisdiction or, in the alternative, to have either the entire action transferred to the Southern District of Texas or the action against himself severed and transferred to that district.

The district court denied these motions. *Marine Midland Bank v. Keplinger & Associates, Inc.*, 488 F.Supp. 699 (S.D.N.Y.1980).

2. The district court rejected Miller's additional contention that the complaint failed to state a cause of action in tort.

other documentary evidence presented on the motion, the court concluded that Miller's acts in New York had been performed only in his capacity as president of Miller & Associates. It found that Miller had prepared the Miller Report not alone, but rather with five associates; that, in his oral presentation to Marine Midland, Miller merely repeated what was already contained in the report; that the payments for the report had been made not to Miller personally but to Miller & Associates; and that Miller had received no benefits other than his salary as a member of the corporation. The court thus ruled that Miller was protected by the fiduciary shield. The court rejected Marine Midland's argument that Miller was personally subject to the court's jurisdiction because Miller & Associates was merely a shell and Miller's acts had in fact been performed in his own behalf and thus in his individual capacity. Treating this contention as a request to disregard the corporate entity, the court found that Marine Midland had not made a showing sufficient to meet New York's demanding standard for piercing the corporate veil. *Id.*

Because we conclude that the court applied too stringent a test in its treatment of the corporate shell issue, we reverse and remand for further proceedings.

### Discussion

It is undisputed that an individual who commits a tort while acting in his capacity as a corporate officer or employee may be held personally liable. *See, e. g., Miller v. Glant Swedish Metal Corp.*, 72 A.D.2d 520, 420 N.Y.S.2d 900 (1979); *LaLumia v. Schwartz*, 23 A.D.2d 668, 257 N.Y.S.2d 348 (1965); *Lutz Feed Co. v. Audet & Co.*, 72 Misc.2d 28, 337 N.Y.S.2d 852 (1972). At issue in this case is not whether such a person may be liable, but rather whether and when a person acting in New York in his capacity as a corporate employee may be subject to jurisdiction as an individual under the relevant provisions of the New York long-arm statute.

The teaching of the courts of this Circuit and of New York is that there is a dichotomy between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts. *See, e. g., Lehigh Valley Industries v. Birenbaum*, 527 F.2d 87, 92–93 (2d Cir. 1975) (dictum); *United States v. Montreal Trust Co., supra; Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp. 1322, 1347 (E.D.N.Y.1981); *Grove Press, Inc. v. CIA*, 483 F.Supp. 132, 135 (S.D.N.Y.1980), *rev'd on other grounds, sub nom. Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2d Cir. 1981); *Yardis Corp. v. Cirami*, 76 Misc.2d 793, 351 N.Y.S.2d 586 (1974). *See also Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969). These cases have recognized that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.[3] Although the district court in *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 619 (W.D.N.Y.1977), has opined that the fiduciary shield should never be made available where the actions of the corporate agent are tortious, this stance, except as tempered by the principles discussed below, is not the prevailing view. In any event, given the rationale for the fiduciary shield doctrine, we think it obvious that the doctrine should be applied where the tort al-

---

**3.** The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long arm statute. *See United States v. Montreal Trust Co., supra*, 358 F.2d at 242.

leged is negligent misrepresentation and the statements attributed to the corporate agent consisted of no more than confirmations and reiterations of the corporation's own statements.

As an equitable principle, the fiduciary shield doctrine is not applied mechanically; the determination of the appropriateness of its application requires an analysis of the particular facts of the case. In each instance, fairness is the ultimate test. Its applicability depends generally on the employee's faithful pursuit of the corporation's interests rather than his own interests. Thus, when a corporate employee acts in his own personal interest rather than in the best interest of his corporation, he is not protected by the fiduciary shield since it is equitable that his self-interested actions be considered his own and be treated as a predicate for the exercise of jurisdiction over him personally. Accordingly, in *United States v. Montreal Trust Co., supra*, 358 F.2d at 243, we held that jurisdiction could be asserted under CPLR § 302(a)(1) with regard to a corporate officer's diversion of funds for personal use, since that diversion could not be considered action in the interests of the corporation but rather was the officer's personal act. In *Lehigh Valley Industries v. Birenbaum, supra*, we intimated that in similar circumstances we would reach the same result under § 302(a)(2). There we stated in dictum that if the defendant had performed acts in New York solely in his corporate role, he would not be subject to personal jurisdiction. Although we did not make a detailed analysis of the jurisdiction questions because of our conclusion that the acts alleged would not give rise to any liability, our discussion implied that the fiduciary shield would not protect a corporate agent if his actions were not in the best interests of the corporation and those actions were therefore properly attributable not to the corporation but to himself.

In evaluating the fairness of subjecting an individual to personal jurisdiction for acts done in his role as a corporate employee, it is appropriate to focus not only on the fealty of the employee to the corporation in the performance of those acts, but also on the nature of the corporation and the individual's relationship to it. If the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken simply in his own interest. In such circumstances it will not advance notions of fairness to allow the owner of the corporation to invoke the protections of the fiduciary shield. As Judge Weinstein observed, obiter, in *Bulova Watch Co. v. K. Hattori & Co., supra*,

> As the term "fiduciary shield" suggests, this is an equitable doctrine. It should be followed not [ ] mechanically but with a sound exercise of discretion. If, for example, the [corporation] lacked sufficient assets to respond or if it were a shell utilized by an individual defendant for his own benefit, the balance of fairness might be tipped and jurisdiction over the individual might lie.

508 F.Supp. at 1348.

In deciding whether the corporation is a real or a shell entity, the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil. That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. In determining whether a corporation for which an owner-employee acts is really "another," it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.

904

In the present case, in assessing Marine Midland's assertion that Miller & Associates was a mere shell for Miller, and that Miller's actions, while ostensibly taken in his corporate role, were in fact his own, the district court erred in applying the strict test used by New York in determining whether or not to pierce the corporate veil for purposes of liability. In deciding the limited question of whether it had jurisdiction the court should have looked only to the question whether Miller & Associates was a shell for Miller; it should not have required a showing that the shell was used to commit a fraud.

Given this less onerous standard, Miller's motion should not have been granted on the basis of the record as it stood before the district court. In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. *Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56 (2d Cir. 1981); *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion. *Visual Sciences Inc. v. Integrated Communications, Inc., supra; Data Disc, Inc. v. Systems Technology Associates, supra; United States v. Montreal Trust Co., supra*, 358 F.2d at 242.

In the present case, Marine Midland presented deposition testimony and affidavits concerning the ownership, capitalization, and use by Miller of Miller & Associates, and it quoted Miller's attorney as having stated that Miller & Associates was no more than a telephone number and stationery. Marine Midland thus made a prima facie showing that Miller & Associates was a shell corporation for Miller. The motion to dismiss should not have been granted without an evidentiary hearing.

Conclusion

The judgment is reversed and the cause is remanded to the district court for further proceedings in accordance with this opinion.