59 F.3d 170
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 DREXEL CHEMICAL COMPANY, Plaintiff-Appellee,
v.
SGS DEPAUW & STOKOE, Defendant-Appellant.
 No. 94-5564.
 United States Court of Appeals, Sixth Circuit.
 June 22, 1995.
 
 Before: KEITH, MARTIN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an interlocutory appeal of a district court order denying Societe Generale de Surveillance DePauw & Stokoe's Motion to Dismiss for lack of personal jurisdiction and forum non conveniens. Because we find that the district court should have permitted discovery or held an evidentiary hearing, rather than deciding the issue of personal jurisdiction on the basis of written submissions only, we remand the case to the district court.
 
 
 2
 In December 1991, the Tennessee-based Drexel Chemical Company contracted in Poland with an Austrian chemical company, Chrisfield Holding Corporation, to purchase certain pesticides. The purchase was to be financed through a letter of credit that required the chemicals to be tested and certified prior to the completion of the transaction.
 
 
 3
 SGS DePauw & Stokoe, a Belgian company wholly-owned by the Swiss-based SGS Holding, and SGS Poland, a Polish-based, majority-owned subsidiary of SGS Holding, were ultimately chosen to perform the requisite testing and certification. Drexel's International Sales Manager, Leigh Shockey, specifically requested that an SGS entity perform the inspection, in light of the corporation's reputation, its large size and accessibility in the United States, and its record of prior dealings with Drexel. This request was reflected in the original letter of credit, which instructed that an "SGS inspection certificate" was required on all merchandise.
 
 
 4
 Because the goods were to be shipped from a Polish port, Shockey allegedly contacted "the SGS office in New Orleans" as well as the "SGS Office in New York" to verify that SGS Poland had the capacity to inspect them. On January 9, 1992, Shockey learned from Padierna, the president of Chrisfield, that SGS Poland could not conduct both parts of the required inspection, because it did not have a chemical laboratory. Padierna allegedly proposed that SGS Poland physically inspect the product and seal the containers and another SGS office analyze and certify the chemicals. Because the entire inspection would still be completed by SGS, Shockey consented to this arrangement.
 
 
 5
 In the wake of the alleged agreement between Padierna and Shockey, Drexel prepared an amendment to the letter of credit, authorizing "two separate SGS offices" to test the chemicals. The amendment identified SGS Poland as the entity selected to physically inspect the chemicals and "another SGS European office such as Hamburg or Antwerp," as the entity chosen to perform the required chemical analysis.
 
 
 6
 SGS Poland witnessed the filling and sealing of the containers and drew the required samples. It then prepared an inspection report attesting to those activities. SGS DePauw & Stokoe ultimately analyzed the pesticide samples it received in Belgium and furnished an analytical report outlining the results of its inspection. Specifically, the report certified that the samples contained 96% linuron and 97% diuron. Based on the representations by SGS Poland and SGS DePauw & Stokoe that the chemicals were what they purported to be, Drexel paid for them. As later shipped, however, the goods did not conform to contract specifications. Upon receiving the chemicals in the United States, Drexel discovered that they contained none of the active ingredients certified as present by SGS Poland and SGS DePauw & Stokoe.
 
 
 7
 Drexel subsequently learned that other companies had been similarly duped. In a letter denying its own liability, the Polish freight insurer explained that "[s]imilar results have been obtained by various other laboratories testing samples of other shipments recently arranged by Chrisfield and destined for other consignees throughout Europe." According to the letter, Chrisfield "was engaged in numerous illegal transactions and has committed a number of commercial frauds."
 
 
 8
 Drexel brought suit against SGS DePauw & Stokoe, SGS Poland, and SGS Holding, alleging breach of contract and negligent or intentional misrepresentation. Drexel filed its original complaint on July 21, 1992, and an amended complaint on October 21. Although Drexel has tried to serve process upon all of the named defendants, SGS DePauw & Stokoe is the only defendant that has been served and, consequently, is the only defendant that has appeared.
 
 
 9
 SGS DePauw & Stokoe filed a Motion to Dismiss on March 1, 1993, alleging insufficiency of process, lack of personal jurisdiction, and forum non conveniens. In support of its motion, SGS DePauw & Stokoe claimed that it never communicated with Drexel and that it had no links to Tennessee. SGS DePauw & Stokoe also submitted affidavits explaining the structure of the SGS corporate family and averring that SGS DePauw & Stokoe does not do business in Tennessee. Drexel, in turn, submitted Shockey's affidavit in opposition to the motion. Without allowing discovery or holding an evidentiary hearing, the district court denied the motion on May 11.
 
 
 10
 On June 25, SGS DePauw & Stokoe filed a motion for reconsideration or for certification of an interlocutory appeal on the issues of personal jurisdiction and forum non conveniens. In an order dated January 24, 1994, the district court denied the motion for reconsideration but granted the request for certification of an interlocutory appeal. This order also stated that if properly served, SGS Poland and SGS Holding would be bound by the court's ruling on the issues of personal jurisdiction and forum non conveniens. In a February 1 order, the district court amended its May 11, 1993, order to certify an interlocutory appeal with respect to the issues of personal jurisdiction and forum non conveniens.
 
 
 11
 SGS DePauw & Stokoe then filed a petition in this Court, requesting permission to appeal. This Court granted the request on April 26, concluding that immediate review was appropriate under 28 U.S.C. Sec. 1292(b). The petition was docketed as a notice of appeal pursuant to Rule 5(d) of the Federal Rules of Appellate Procedure.
 
 
 12
 In ruling upon a motion to dismiss for lack of personal jurisdiction, the district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). Although a plaintiff always bears the burden of establishing that jurisdiction exists, the weight of that burden depends upon whether the district court rules on the jurisdictional issue after hearing evidence or only upon written submissions of the parties. Id. In this appeal, we are faced with the question of whether the district court selected the proper method for ruling upon SGS DePauw & Stokoe's motion to dismiss. Therefore, we must determine whether the district court erred in ruling upon that motion on the basis of written affidavits only. If, in the complaint, it is unrefuted that the court has no jurisdiction, certainly no hearing or further development of the facts is necessary. Here, however, the written submissions raised disputed issues of fact with regard to cross-corporate entanglements. In order to resolve those issues, the district court should have allowed further discovery or held an evidentiary hearing. See American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988) (citing Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)). Therefore, we remand the case to the district court for further fact-finding proceedings that it deems appropriate. We note that if the court decides to hold an evidentiary hearing, Drexel must establish the jurisdictional facts by a preponderance of the evidence in order to avoid dismissal. Id. (citing Data Disc, 557 F.2d at 1285). Because our decision leaves the jurisdictional issue unresolved, we need not address SGS DePauw & Stokoe's forum non conveniens argument.
 
 
 13
 For the foregoing reasons, we REMAND the case to the district court for proceedings consistent with this opinion.