**CORRESPONDENT SERVICES CORPORATION, Interpleader–Plaintiff,**

v.

**J.V.W. INVESTMENTS LTD., First Equities Corporation of Florida, J.V. Waggoner, and Donal Kelleher, Interpleader–Defendants,**

and

**Suisse Security Bank and Trust, Ltd., Additional Defendant on the Cross–Claims.**

No. 99 Civ. 8934 (RWS).

United States District Court, S.D. New York.

Nov. 13, 2000.

As Amended Nov. 30, 2000.

Drinker Biddle & Reath, New York City (Brian F. McDonough, of counsel), for Interpleader–Plaintiff.

Shaw, Pittman, Potts & Trowbridge, New York City (Kenneth A. Caruso, John A. Zaloom, of counsel), for Interpleader–Defendant.

Kronish Lieb Weiner & Hellman, New York City (Steven M. Cohen, of counsel), for Additional Defendant on the Cross–Claims.

## OPINION

SWEET, District Judge.

Defendant and third-party plaintiff J.V.W. Investment Ltd. ("JVW") moves, pursuant to New York C.P.L.R. § 6210, to

confirm an order of attachment issued on September 28, 2000, restraining defendant Suisse Security Bank and Trust, Ltd. ("SSBT") from transferring or disposing of any assets held at an account at Tucker Anthony in New York. SSBT moves to vacate the preliminary attachment order on the ground that this Court lacks personal jurisdiction over it pursuant to Rule 12(b)(2), Fed.R.Civ.P. For the foregoing reasons, the attachment order will remain in effect until this case is resolved on the merits.

### The Parties

Interpleader-plaintiff CSC is a Delaware corporation with its principal place of business in New York, New York.

Defendant JVW is a corporation formed under the laws of the Commonwealth of Dominica ("Dominica"), with its principal places of business in Dominica.

Defendant Donal Kelleher ("Kelleher") is a foreign national and a resident of Surrey, England. At all times relevant to this action, Kelleher was an officer of JVW.

Third-party defendant SSBT is a Bahamian corporation with its principal place of business in the Bahamas. SSBT received a transfer of funds from Kelleher for deposit into a new account on behalf of JVW that is the subject of this action.

### Prior Proceedings

The background and prior proceedings in this action have been set forth in a prior opinion, *Correspondent Services Corp. v. J.V.W. Investment, Ltd.*, 2000 WL 1174980 (S.D.N.Y. Aug.18, 2000), familiarity with which is assumed.

The remaining issue in this action is JVW's attempt to recover a $2.3 million shortfall in a $10 million deposit to the Bahamian bank. SSBT alleges that the shortfall is due to a decrease in the value of stocks it purchased with the funds at JVW's request. JVW disputes ever authorizing the purchase of stock, and contends that because the funds were deposited in a "one-day call" money market account, SSBT's failure to return the funds upon request renders it liable for the eventual shortfall. In response, SSBT contends that the swift transfers of large sums into and then out of the account raised suspicions of money laundering, as a result of which it notified the Bahamian banking authorities and froze the account during the ensuing investigation. SSBT holds funds at the New York brokerage firm of Tucker Anthony, which JVW wishes to attach in the present action.

JVW moved by order to show cause on September 28, 2000 for leave to file and serve an amended pleading adding SSBT as a defendant on cross-claims, asserting cross-claims against Kelleher and SSBT, and moving for an attachment order against SSBT's funds at Tucker Anthony. On September 28, 2000, after hearing argument from counsel for both JVW and SSBT, this Court issued a temporary restraining order attaching up to $3 million in assets held at Tucker Anthony by SSBT. JVW filed a $200,000 undertaking pursuant to CPLR § 6212(b). The attachment remained in effect until JVW's motion to confirm was heard on October 5. By agreement of the parties, the attachment order continued until November 1, when the rescheduled hearing took place.

SSBT opposed the motion to confirm and moved to vacate the attachment order on the grounds that (1) as a Bahamian corporation with no significant contacts in New York, it was not subject to the personal jurisdiction of this Court; and (2) JVW failed to meet its burden of proving that it was likely to succeed on the merits of the underlying claim.

The Court granted JVW's motion to serve amended pleadings adding SSBT as a third-party defendant, and extended the temporary order attaching the funds for 10 days, until Friday, November 17, 2000, pending this decision.

## I. *Discussion*

As any order issued against a party over whom this Court lacks jurisdiction would be void, the jurisdictional question is addressed first.

### A. *Personal Jurisdiction*

SSBT argues that, as it is a Bahamian bank with no contacts with New York, it is not subject to personal jurisdiction in this Court, and therefore the Third–Party Complaint should be dismissed and the order attaching its assets at Tucker Anthony be vacated.

■ On a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the facts articulated in the well-pleaded complaint, attachments and affidavits are construed in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). A plaintiff need only make out a *prima facie* showing that personal jurisdiction exists to survive a motion to dismiss. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

■ New York law, which determines personal jurisdiction in this diversity action, *CutCo Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986), provides long-arm jurisdiction over a foreign corporation that either (1) "transacts any business within the state or contract anywhere to supply goods or services in the state," or (2) "commits a tortious act within the state...." N.Y. CPLR § 302(a)(1), (2). A foreign corporation transacts business when it "purposefully avails [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo,* 806 F.2d at 365 (*citing Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

### 1. *Transacting Business*

■ For jurisdiction over a foreign corporation to exist under a "transacting business" theory, the plaintiff must also show that the cause of action "arises out of" the defendant's transactions within the state. *See* N.Y. CPLR § 302(a); *Kronisch v. U.S.,* 150 F.3d 112, 130 (2d Cir.1998). A plaintiff asserting jurisdiction under § 302(a) need not show regular or continuous activity in the state; even a single action within New York is sufficient to confer jurisdiction under § 302(a) if it has a sufficient nexus with the cause of action. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 786 (2d Cir.1999); *CutCo,* 806 F.2d at 365; *Kreutter v. McFadden Oil,* 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988); *George Reiner and Co. v. Schwartz,* 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 (1977); *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 456, 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

■ To determine whether a corporation has "transacted business," courts must look to the totality of circumstances. *Bank Brussels Lambert,* 171 F.3d at 787. SSBT has no offices, telephone listing or personnel in New York. However, SSBT concedes that it holds securities accounts at Tucker Anthony, "which it uses to facilitate international financial transactions for itself and for its clients, including the ACM mutual fund purchases that Mr. Kelleher requested on behalf of JVW." (Harajchi Aff. at ¶ 23.) Whether Kelleher did in fact request that SSBT purchase shares in the ACM mutual fund is a question of fact that JVW disputes. However, regardless of whether the purchase was authorized by JVW or Kelleher, both parties agree that SSBT did purchase mutual funds for JVW through Tucker Anthony in New York. (JVW Answer and Cross–Compl. ¶¶ 30–31, 58; Harajchi Aff. at ¶ 23). Whether this act was pursuant to the contract, as SSBT alleges, or a tortious act of conversion, as JVW claims, the single purposeful act of transferring JVW's funds to New York constitutes the "transaction of business" from which this cause of action directly

arises. *See Brussels Lambert,* 171 F.3d at 787 & n. 3. As such, SSBT "transacts business" in New York that justifies the exercise of long-arm jurisdiction pursuant to § 302.

SSBT, citing *Leema Enterprises, Inc. v. Willi,* 575 F.Supp. 1533, 1537 (S.D.N.Y. 1983), suggests that maintaining correspondent bank accounts in New York is insufficient to confer personal jurisdiction. However, the *Willi* court's holding was more narrow: it held that the "Bank's mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers ... is not enough to confer this court with personal jurisdiction over the defendant, especially where, as here, the accounts are unrelated to the fraud alleged." *Id.* In this case, SSBT concedes not only that it maintains an account at Tucker Anthony in New York to facilitate international financial transactions (Resp. Mem. at 8, 9 n. 3.), but that "SSBT purchased ACM funds on behalf of JVW through Tucker Anthony and ultimately delivered the securities to JVW through Tucker Anthony." (Resp. Mem. at 11.) Thus, unlike *Willi,* SSBT's unauthorized purchase of stock for JVW through SSBT's Tucker Anthony account is at the very root of the action in this case, and gives rise to personal jurisdiction in New York.[1]

### 2. *Tortious Act in New York*

▆ Moreover, even if jurisdiction were not properly exercised pursuant to § 302(a)(1), taking the facts as pleaded in the complaint as true, SSBT's unauthorized transfer of funds to Tucker Anthony in New York was conversion, a tortious act in New York that confers jurisdiction over SSBT pursuant to § 302(a)(2).

---

1. In addition, SSBT mischaracterizes the result in *Johnson v. United Overseas Bank,* No. 95 Civ. 9508, 1997 WL 79871 (S.D.N.Y. Feb.25, 1997), where the Court found that the "deliberate and intentional" use of a New York bank account did in fact establish the requisite contacts to confer *quasi in rem* jurisdiction. *Id.* at *4.

In sum, SSBT purposefully availed itself of New York law by purchasing securities at Tucker Anthony, thereby subjecting itself to the personal jurisdiction of this Court.

### B. *Attachment*

New York law, which governs the issuance of an attachment order, Fed.R.Civ.P. 64, grants courts authority to issue an order of attachment where the plaintiff would be entitled to a monetary judgment against a foreign corporate defendant such as SSBT. N.Y. CPLR § 6201(1). Such an order may be issued if (1) there is a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) one or more grounds for attachment provided in § 6201 exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. N.Y. CPLR § 6212. The temporary attachment order was issued on September 28, 2000.

On November 1, 2000, JVW brought the required motion to confirm the attachment order pursuant to CPLR § 6210, and SSBT moved to vacate. At the motion to confirm, the plaintiff has the burden of proving (1) the grounds for the attachment; (2) the need for continuing the levy; and (3) the probability that he will succeed on the merits. N.Y. CPLR § 6223. JVW alleges grounds for attachment exist pursuant to CPLR § 6201(a) in that it will be entitled to a money judgment against SSBT, a foreign corporation, that the levy should be continued to avert the chance that the funds will be transferred out of the jurisdiction, and that it will likely succeed on the merits.

JVW has met its burden on the first two grounds, and SSBT contests only the third factor, whether JVW is likely to succeed on the merits.[2]

---

2. It should be noted that JVW is *not* claiming that SSBT has any fraudulent intent to dispose of the funds pursuant to CPLR § 6201(3).

### 1. *Probability of JVW's Success on the Merits*

■ In deciding whether there is a probability of success on the merits, inferences should be drawn in favor of the party seeking the attachment. *See Bank Leumi Trust Co. v. Istim, Inc.,* 892 F.Supp. 478, 482 (S.D.N.Y.1995).

■ JVW has presented affidavit evidence establishing the following: JVW, through its officer, Kelleher, opened an account at SSBT on June 16, 1998, by transferring a $10 million certificate of deposit (CD). (OSC Ex. E.) The CD was to have been placed in a sub-account of British Trade and Commerce Bank ("BTCB") at SSBT. Kelleher had intended to open a "one-day call" money-market account, and, realizing he had deposited the CD into a general SSBT account rather than the BTCB sub-account, authorized on June 29 and June 30, 1998 the transfer of the full $10 million as soon as the CD cleared. (*See* OSC Exs. E, G, I, K.)

However, SSBT did not conduct the transfer, and instead froze the account and initiated an investigation on suspicion of money laundering. (OSC Exs. E, G, K, N, T, U). JVW repeatedly requested that the funds be returned to JVW on several occasions from June, 1998 to September 1998, to no avail. (OSC Exs. I, J, R, S, V, AA, CC.) The Bahamian authorities investigated, established that no crime was being attempted, and authorized SSBT to release the funds on September 2, 2000. (OSC Exs. T, U.)

Meanwhile, SSBT had purchased stock in ACS some time in late June, pursuant to two letters of authorization it says it received from Kelleher on June 24 and July 1, 1998. The funds were eventually released, but totaled only $7.7 million, which SSBT justified as being the result of the devaluation of the stock JVW had authorized it to purchase.

Yet JVW notes that neither letter of authorization was disclosed to JVW until September 1998, nearly three months after they were allegedly sent, raising questions about their authenticity. The two documents SSBT cites as proof of Kelleher's authorization are cut-off, blurry fax copies in which only the top fraction of Kelleher's signature is visible. (OSC Ex. H, L.) Kelleher alleges that he never authorized the purchase of stock, and that these documents have been falsified. Tending to support this claim, none of the correspondence from SSBT to JVW regarding the freezing of the account between the time the stock was allegedly purchased and the time the funds were returned made any reference to the purchase of stocks, or to the fact that stocks would have to be sold in order to release funds for the requested transfer to the BCBT sub-account.

SSBT claims that the authorizations were valid, and that it purchased the stock with JVW's funds before the account was frozen during the investigation. Yet the fact that a legitimate investigation was conducted by Bahamian authorities, and that SSBT was authorized to freeze the account until the resolution of that investigation, does not answer the crucial question: whether JVW authorized the stock purchase. Although these central fact questions need not be resolved at this early stage of the litigation involving SSBT, based upon the evidence presented regarding the timing of disclosure, the questionable authenticity and timing of the authorization letters, it appears that Kelleher did not authorize the purchase of stock with these funds. For the purposes of the motion to confirm the attachment order, then, JVW has met its burden of proving that it is likely to prevail on the merits.

### Conclusion

This Court having personal jurisdiction over SSBT, and JVW having shown a likelihood of success on the merits, the order of attachment shall remain in force pending the resolution of this action on the merits.

It is so ordered.