INTERNATIONAL EQUITY
INVESTMENTS, INC.,
et ano., Plaintiffs,

v.

OPPORTUNITY EQUITY PARTNERS,
LTD. (f.k.a. CVC/Opportunity Equity
Partners, Ltd.), et al., Defendants.

No. 05 Civ. 2745(LAK).

United States District Court,
S.D. New York.

March 1, 2007.

Carmine D. Boccuzzi, Jr., Howard S. Zelbo, Cleary Gottlieb Steen & Hamilton, LLP, New York, NY, for Plaintiffs.

Joseph D. Pizzurro, Nancy Eileen Delaney, Peter E. Fleming, Jr., Curtis, Mallet–Prevost, Colt & Mosle, LLP, Howard L. Vickery, II, Philip C. Korologos, Boies, Schiller & Flexner, LLP, Marc Laurence Greenwald, Emily Barrett Costello, Quinn Emanuel Urquhart Olive & Hedges LLP, New York, NY, for Defendants.

John Nicholas Orsini, Scott M. Berman, Friedman Kaplan Seiler & Adelman LLP, New York, NY, for Movant.

## MEMORANDUM AND ORDER

KAPLAN, District Judge.

Defendants Arthur Carvalho, Opportunity Fund ("OF"), and Opportunity Prime Investment Services, Ltd. ("OP") move to dismiss the Third Amended Complaint ("TAC") as to them for lack of personal jurisdiction or, alternatively, failure to state a claim upon which relief may be granted. This memorandum and order assumes familiarity with the prior decisions in this case.

*Personal Jurisdiction*

Carvalho was a shareholder of CVC/Opportunity Equity Partners, Ltd. ("Opportunity"), the general partner of the CVC Fund. He was identified specifically in the Operating Agreement ("OA") as a Principal, which contemplated his investment in deals in which Dantas's investment fund, the CVC Fund, and the Onshore Fund would invest. *See* Mukhi Decl. Ex. F, § 3.01(d). The OA was signed on his behalf by his attorney-in-fact. It included his agreement that Dantas or his designees would have exclusive management control of every so-called side-by-side investment. It contained a broad forum selection and submission to jurisdiction clause that specifically included the Princi-

pals. *Id.* § 7.06. *See generally Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.,* No. 05–2745(LAK), 475 F.Supp.2d 450, 451, 2007 WL 570407, at \*1 (S.D.N.Y. filed Feb. 26, 2007) (*"IEII "*).

*Carvalho*

The essence of the claims against Carvalho is that he, like Dantas, violated his duties to IEII and the CVC Fund in connection with the making and management of the side-by-side investments contemplated by the OA and in his dealings with the CVC Fund. These claims "aris[e] out of or [are] based upon [the OA] or the transactions contemplated [t]hereby" and therefore fall within the submission to jurisdiction contained in the OA. This is true even of the first claim, despite the fact that it nominally is for breach of the Limited Partnership Agreement ("LPA"), both because the LPA was among the transactions contemplated by the OA and because alleged breaches of the LPA arise out of other transactions contemplated by the OA.

*OF and OP*

1. Alter Ego *Claims*

OF and OP are not parties to the OA. Nevertheless, Dantas, Carvalho, and Opportunity are parties, and all of the claims against OF and OP save one rest exclusively on the premise that they are *alter egos* of Dantas, Carvalho, and Opportunity. TAC ¶¶ 212 (first claim), 218 (second), 228 (third), 237 (fourth), 242 (fifth), 254 (seventh), 262 (eighth), 272 (ninth).[1]

Plaintiffs, in contrast to the use of the *alter ego* doctrine considered in *IEII,* here assert a reverse piercing claim—i.e., they seek to justify the exercise of jurisdiction over the allegedly dominated entities on the basis of the consent to jurisdiction of the alleged dominators. *See generally, e.g., Am. Fuel Corp. v. Utah Energy Dev.*

*Co.,* 122 F.3d 130, 134 (2d Cir.1997) (reverse piercing); *LiButti v. United States,* 107 F.3d 110, 119 (2d Cir.1997) (reverse piercing); *Quebecor World (USA), Inc. v. Harsha Assocs.,* 455 F.Supp.2d 236, 243–44 (W.D.N.Y.2006) (consent to jurisdiction by dominating party in *alter ego* relationship warrants exercise of jurisdiction over dominated party); *Miramax Film Corp. v. Abraham,* No. 01 Civ. 5202(GBD), 2003 WL 22832384, at \*6–7 (S.D.N.Y. Nov. 25, 2003) (reverse piercing); *SIPC v. Stratton Oakmont, Inc.,* 234 B.R. 293, 321–23 (Bankr.S.D.N.Y.1999) (reverse piercing); *Goldsmith v. Sotheby's, Inc.,* 9 Misc.3d 1120(A), 2005 WL 2715667, at \*4 (Sup.Ct. N.Y.Co. Sept. 8, 2005) (reverse piercing for jurisdictional purposes); 1 WILLIAM MEADE FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS ("FLETCHER") § 41.70 (2006 rev. vol.). As plaintiffs have alleged claims against Dantas, Carvalho, and Opportunity that fall within the submission to jurisdiction in the OA, jurisdiction over OF and OP based on that submission exists if plaintiffs have made out a sufficient case of reverse piercing to defeat this motion, bearing in mind that they still would bear the burden of proving jurisdiction at trial.

Defendants argue that New York typically applies the law of the jurisdiction in which an entity is organized in order to determine whether to disregard the corporate form. OF is organized in the Cayman Islands and OF in the British Virgin Islands, both of which generally follow English law. In consequence, OF and OP argue that English law governs.

Plaintiffs concede the general principle, but contend that New York law controls here by virtue of the governing law clause in the OA. Mukhi Decl. Ex. F, § 7.05. But it is unnecessary to resolve this issue, as defendants have failed to establish a true

1. The exception is the tenth claim, which asserts that OF and OP are liable as aiders and abettors of breaches of fiduciary duty by others.

conflict of laws notwithstanding their submission of learned declarations by Lord Francis Patrick Neill of Bladen, Q.C., and William James Tyre Bagnall on English law. Docket items 389–90. Neither declaration addresses the question whether the same standard that governs disregard of the corporate entity for liability purposes controls for jurisdictional purposes.[2] Neither deals with the question whether reverse piercing is available under English law and, if so, in what circumstances. And neither points to any difference between English and New York law that is material for present purposes. Accordingly, I apply New York law, as it were by default.

■ "New York law allows the corporate veil to be pierced *either* when there is fraud or when the corporation has been used as an alter ego." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir.1991) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir.1990) (emphasis in original) (internal quotation marks omitted)). The latter normally requires "a showing of ... complete control by the dominating corporation that leads to a wrong against third parties." *Id.* at 138. But this standard is relaxed where the *alter ego* theory is used not to impose liability, but merely to establish jurisdiction. *E.g., Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Storm LLC v. Telenor Mobile Commc'ns AS,* No. 06 Civ. 13157(GEL), 2006 WL 3735657, at *13 n. 8 (S.D.N.Y. Dec.15, 2006); *Quebecor World (USA), Inc.,* 455 F.Supp.2d at 243. In such an instance, the question is only whether the allegedly controlled entity "was a shell" for the allegedly controlling party; it is not necessary to show also "that the shell was used to commit a fraud." *Marine Mid-*

land Bank, N.A., 664 F.2d at 904; *accord* 1 FLETCHER § 43.70.

In *Wm. Passalacqua Builders, Inc.,* the Second Circuit made clear that there is an "infinite variety of situations" that might warrant disregarding the corporate veil and that the ultimate question of veil piercing must be decided by "considering the totality of the evidence." 933 F.2d at 139. In a forward-piercing case, "[t]he jury must decide whether—considering the totality of the evidence, *see William Wrigley, Jr. Co. v. Waters,* 890 F.2d 594, 601 (2d Cir.1989)—the policy behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation." *Wm. Passalacqua Builders, Inc.,* 933 F.2d at 139. By parity of reasoning, the question whether to engage in reverse piercing depends upon an assessment, in light of the totality of the circumstances, of whether the presumption of separate corporate personality is outweighed by the policy of disregarding the corporate form in light of the nature and extent of domination of the corporate entity by an individual or group of individuals. That assessment is for the trier of fact except where there are no genuine issues of material fact *and* the record requires the conclusion that the movant is entitled to judgment as a matter of law.

■ This record does not permit at least the second and quite possibly the first of these conclusions, at least because, although many facts relevant to this assessment are undisputed, they do not all cut in the same direction. Accordingly, plaintiffs have carried their burden, for

---

**2.** The relevance of this issue would depend on whether New York law would control the

jurisdictional issue regardless of the law governing the issue of *alter ego* liability.

purposes of the motion to dismiss for lack of personal jurisdiction, of sufficiently demonstrating that OF and OP are *alter egos* of Dantas, Carvalho, and Opportunity and thus have justified the conclusion, for present purposes, that OF and OP are subject to jurisdiction on the claims in respect of which they are sued as alleged *alter egos*. It will remain plaintiffs' burden ultimately to prove the existence of personal jurisdiction.

### 2. The Aiding and Abetting Claim

■ The tenth claim, which seeks to hold OF and OP liable as aiders and abettors of breaches of fiduciary duty by others, is another matter. As personal jurisdiction must be determined on a claim-by-claim basis, I must determine whether plaintiffs have established sufficiently that the claim comes within the New York long arm statute, CPLR § 302(a), and, if so, whether the exercise of jurisdiction with respect to this claim would satisfy due process.

Plaintiffs argue first that all defendants transacted business in New York and that the tenth claim arose out of those activities, thus subjecting defendants to jurisdiction under CPLR § 302(a), subd. 1. But the argument does not refer specifically to OF or OP. I fail to see any basis for concluding that the tenth claim arises out of the transaction by either of any business in New York.

Plaintiffs' fall-back position is CPLR § 302(a), subd. 3. The TAC certainly permits the conclusion that OF and OP committed tortious acts outside the State. I assume without deciding that these caused injury here. But plaintiffs have made no showing that OF and OP meet the requirements of CPLR § 302(a), subd. 3(i) or (ii).

Accordingly, the tenth claim will be dismissed for lack of personal jurisdiction.[3]

### Legal Sufficiency

### Claims Against OF and OP

OF and OP argue that plaintiffs' *alter ego* allegations, even if sufficient to make out a *prima facie* case for the exercise of personal jurisdiction, fail to state a claim upon which relief may be granted in light of the stringent requirements of English law. They rely again on the declarations of Lord Neill of Bladon and Mr. Bagnall.

As these declarations show, the fountainhead of English law on the subject is *Salomon v. Salomon & Co.*, [1897] A.C. 22, which, broadly speaking, established in England the proposition familiar to American lawyers, viz. that a company is a legal entity separate and distinct from its shareholders. Lord Neill acknowledges, however, that the principle in *Salomon* is subject to exceptions and that the corporate entity may be disregarded "where a company is specially created for a fraudulent purpose and/or as a device to avoid a contractual or other legal obligation or where an existing company is utilised for such a purpose or as such a device." Neill Decl. ¶ 20.

It may be doubted whether this statement of English law differs in any material degree from the law of New York, which permits the imposition of liability on a *dominating* entity upon "a showing of . . . complete control by the dominating corporation that leads to a wrong against third parties." *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 138. But it is unnecessary to decide that question, at least at this juncture.

Plaintiffs do not allege actual fraud by OF or OP. Federal Rule of Civil Procedure

---

**3.** This may prove to be a Pyrrhic victory. The tenth claim seeks to hold these defendants liable as aiders and abettors for the same misconduct by Dantas and others for which plaintiffs seek to hold them liable as *alter egos*. In consequence, if plaintiffs prevail on the *alter ego* theory, this dismissal probably would be of no practical effect.

9(b) therefore does not apply to the claims against them. Accordingly, the complaint against them cannot be dismissed for legal insufficiency unless it is clear that plaintiffs could prove no facts under its allegations that would entitle them to relief. *E.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ The TAC alleges that OF was used by Dantas and the other dominant parties in entering into several allegedly improper transactions and that OP was used by them as a vehicle to receive nearly $300 million of the improper consideration paid in connection with the April 28th Agreements. As the declarations of Lord Neill and Mr. Bagnall make clear, actual fraud is not an element essential to justify disregard of the corporate entity under Caymans or BVI law. Nor is it essential to recovery under New York law. Accordingly, it cannot now be said that plaintiffs would be able to prove no facts that would entitle them to relief on their *alter ego* claims.

*Claims Against Carvalho*

1. *The Contract Claims*

Carvalho signed the OA and, as a so-called "Principal," the LPA. The seventh claim charges him with breach of both, while the first claim charges breach of the LPA. He seeks dismissal of the former on the ground that he was not a "Manager" as that term is defined by the OA and therefore cannot be liable for the alleged breach. He asks for dismissal of the latter on the ground that he is not a party to the LPA.

■ The seventh claim alleges a breach of Section 5.02 of the OA, which provides in relevant part that "[e]ach of the Managers to the extent deemed practicable ... shall cause, or ... use its best efforts to cause, each Fund to make an investment as a side-by-side investment in each prospective investment ... and to divest from

such Side–by–Side investment" in a side-by-side manner and on a *pro rata* basis in accordance with the parties' pre-existing investments. The OA defines "Manager" to mean "each of the General Partner, the Brazilian Portfolio Manager, any Opportunity Portfolio Manager and any Parallel Fund Portfolio Manager." Mukhi Decl. Ex. F, at 4. Accordingly, Carvalho owed no contractual duty under Section 5.02, and this claim must be dismissed. This of course implies no opinion as to whether Carvalho ·is exposed to liability for the same conduct on another theory.

The first claim yields to a similar analysis. Section 6.1.5 of the LPA provides that "each Principal [including Carvalho] ... acknowledges[ ] that it is a fiduciary to the Limited Partners." Sections 7.3 and 7.4 gave the Limited Partner certain rights to remove the General Partner (Opportunity). Article 6 created an advisory committee for the CVC Fund consisting of Citibank and its designees and required its agreement for certain investments. Carvalho is alleged to have breached these provisions by engaging in self-dealing and other disloyal activities, obstructing the Limited Partner's efforts to remove the General Partner, and circumventing the requirement of advisory committee approval of certain transactions.

■ As Carvalho signed the LPA as a Principal, it cannot be doubted that he is bound by the LPA to the extent it purported to impose duties upon him. Nothing in Article 6 or Sections 6.1.5, 7.3, or 7.4, however, purported to do so. Carvalho's execution of the LPA constituted his acknowledgment via Section 6.1.5 that he personally owed a fiduciary duty to the limited partners, but it did not assume such a duty as a contractual obligation. Accordingly, I see no basis for a claim for breach of the LPA by Carvalho in the particulars alleged, although it seems rea-

sonably likely that the conduct alleged, if proved, would establish breaches by him of the fiduciary duties he acknowledged by signing the LPA, as well, perhaps, as other bases of liability.

### 2. The Breach of Fiduciary Duty Claim

Carvalho next seeks dismissal of the second claim, which is for breach of fiduciary duty, on the theory that (a) the principal of a general partner does not individually owe a fiduciary duty to the limited partners of a limited partnership under Caymans law, and (b) Section 6.1.5 of the LPA should not be construed to alter this rule. I need not consider the position under Caymans law, as no reason is suggested why a principal of a general partner cannot assume fiduciary duties to the limited partners, regardless of whether such duties would have been imposed upon it by law merely by reason of the principal's status. The question therefore comes down to whether Section 6.1.5 is properly construed as having done so.

The operative language is that "[t]he General Partner acknowledges, and each Principal [including Carvalho] by its execution of this Agreement acknowledges, that it is a fiduciary to the Limited Partners." Construction turns on determining the antecedent of the word "it" in the concluding clause—is the antecedent "General Partner" or "each Principal"?

■■ Construing "it" to refer to "each Principal" at first seems linguistically awkward because the Principals all are natural persons. Mukhi Decl. Ex. E, at I–19. But this discomfort is resolved by the facts that (a) the antecedent of the word "its" indisputably is "each Principal," thus demonstrating that the drafters using the neuter pronoun to refer to Principals, and (b) Section 13.14 of the LPA provides that "any pronoun used in this Agreement shall include the corresponding masculine, femi-

nine or neuter forms." Even more important, however, is the fact that construing "it" to refer to the General Partner alone would be senseless. A general partner owes fiduciary duties to limited partners. No apparent purpose would be served by having Principals of the General Partner acknowledge that fact. Thus, construction of Section 6.1.5 to accomplish nothing more than an acknowledgment that the General Partner owed fiduciary duties to the Limited Partners would make the inclusion of the Principals meaningless.

Section 6.1.5 thus does not unambiguously favor Carvalho, in consequence of which this branch of his motion must be denied. While it appears unambiguously to favor the plaintiffs, that point need not be resolved definitively for present purposes.

### 3. The Fraud and Negligent Misrepresentation Claims

Carvalho seeks dismissal of the third and fourth claims on the ground that they fail to plead fraud with the requisite particularity. While the general subject matter and a number of other circumstances underlying these claims are set forth, Carvalho is entitled to a more specific pleadings. Accordingly, these claims will be dismissed with leave to replead.

### 4. The Professional Malpractice Claim

The fifth claim alleges professional malpractice on the theory that Carvalho was obliged by Section 6.6.1 of the LPA to "exercise the standard of care of a professional investment advisor" with respect to the management of the CVC Fund, but failed in a number of respects to do so. TAC ¶¶ 239–42.

■ Certainly it is true, as Carvalho argues, that the shareholders of a general partner ordinarily do not individually owe fiduciary or other duties to the limited

partners. But Carvalho (through his attorney-in-fact) signed the LPA. Article 6.6 is entitled "Standard of Care *and Liability* of General Partners and the Managers." Mukhi Decl. Ex. E, at 47 (emphasis added). Section 6.6.1 then states that "[e]ach of the General Partner and the Principals shall exercise the standard of care of a professional investment advisor" and then goes on to carve out certain exceptions. Contrary to Carvalho's argument, it is difficult to see how this language, insofar as it pertained to Principals such as Carvalho, could accomplish anything except creation of enforceable obligations from the Principals to the Limited Partners. Accordingly, Carvalho's attack on the fifth claim is rejected.

### 5. The Conversion and Unjust Enrichment Claims

Carvalho's challenge to the sufficiency of the eighth and ninth claims (conversion and unjust enrichment) are without merit, substantially for the reasons set forth in plaintiffs' memorandum at pages 33–35 and 38–39.

*Conclusion*

I have considered all of defendants' arguments. To the extent they are not discussed here, they are without merit.

For the foregoing reasons, the motion of defendants Carvalho, Opportunity Fund, and Opportunity Prime to dismiss the complaint is granted to the extent that:

1. The tenth claim for relief is dismissed as to Opportunity Fund and Opportunity Prime for lack of personal jurisdiction.

2. The first, third, fourth, and fifth claims are dismissed as to Carvalho for failure to state a claim upon which relief may be granted, provided, however, that plaintiffs, within fourteen days of the date of this order, may file an amendment to the complaint repleading the third and fourth claims as against Carvalho.

The motion is denied in all other respects.

SO ORDERED.