Cedar Capital Mgt. Group Inc. v Lillie (2023 NY Slip Op 50831(U))

[*1]

Cedar Capital Mgt. Group Inc. v Lillie

2023 NY Slip Op 50831(U)

Decided on August 7, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 7, 2023
Supreme Court, New York County

Cedar Capital Management Group Inc., CADMUS ASSET MANAGEMENT, LTD, CTC TRADING LTD, and CITADEL HOLDINGS INC., Plaintiffs,
against
Brian Lillie, ENTERPRISE HOLDINGS GROUP LTD d/b/a ENTERPRISE HOLDINGS GROUP, LTD, ENTERPRISE HOLDINGS GROUP LLC, EHG CAPITAL MANAGEMENT LIMITED, EHG EQUITIES LIMITED, LILLIHAM HOLDINGS LIMITED, TRACY LILLIE a/k/a TRACY KAY LILLIE, ANDREW GEORGE MICHAEL, SEYED MORTEZA VANAKI, CHRIS CIOFFI a/k/a CHRIS M. CIOFFI, TIM CARR, GULF ATLANTIC TRADERS, LLC, TOM KENT, and CUSTODIAL ACCOUNT AND TRANSACTION SERVICES LLC, ECREATIVE GROUP, INC., THREE WIDE MEDIA, LLC, JANE DOE, JOHN DOE, ABC INC, and XYZ CORP, Defendants.
BRIAN LILLIE, Plaintiff,
against
WAEL CHEHAB, JURI PATRICK BRANDT AKA JP BRADLEY, LOGAN ANDREWS, RISING SUN CONSULTING, Defendants.

Index No. 656042/2020

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 012) 235, 236, 237, 238, 239, 240, 241, 242, 243, 274, 278, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 336, 340, 341, 367 were read on this motion for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 013) 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 276, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 310, 342 were read on this motion to DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 014) 228, 229, 230, 231, 232, 275, 277, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 334, 335 were read on this motion to DISMISS DEFENSE.
Motion sequence nos. 012, 013 and 014 are consolidated for disposition.
This action arises out of a series of investments made by plaintiffs in an allegedly fraudulent scheme operated by defendants.
In motion sequence no. 012, defendants Tom Kent (Kent) and Custodial Account and Transaction Services LLC (CAT) (together, the CAT Defendants) move, pursuant to 3211, to dismiss the amended complaint for lack of jurisdiction and because the claims are time-barred.
In motion sequence no. 013, defendants Brian Lillie (Brian), Enterprise Holdings Group Ltd. a/k/a Enterprise Holdings Group, Ltd. (EHG LTD), Enterprise Holdings Group LLC (EHG LLC), Tracy Lillie a/k/a Tracy Kay Lillie (Tracy), EHG Capital Management Ltd. (EHG Capital), EHG Equities Ltd. (EHG Equities), Lilliham Holdings Limited (Lilliham), eCreative Group Inc. (eCreative), and Three Wide Media LLC (Three Wide) (collectively, the EHG Defendants) move, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the amended complaint on the grounds that the complaint fails to state a cause of action.
In motion sequence no. 014, defendant Tim Carr (Carr) moves, pursuant to CPLR 3211 (a) (1), (5) and (7) and CPLR 3216, to dismiss the amended complaint on the grounds that the complaint fails to state a cause of action and is time-barred.
Plaintiffs Cedar Capital Management Group Inc. d/b/a Cedar Capital Management, Inc. (Cedar), Cadmus Asset Management, Ltd. (Cadmus), CTC Trading Ltd (CTC) and Citadel Holdings Inc. (Citadel) (collectively, plaintiffs) oppose.
Background
The following facts are taken from the amended complaint unless noted otherwise and are assumed to be true for purposes of these motions. Cedar and Citadel are Delaware corporations with principal places of business in New York (NYSCEF Doc No. 72, amended complaint ¶¶ 1, 4 and 27). Cadmus and CTC are Bermuda corporations with principal addresses in Bermuda (id., ¶¶ 2-3). Cedar uses Citadel, Cadmus and CTC to provide investment management services to individuals and entities (id., ¶¶ 23-24). Nonparty Wa'el Chehab (Chehab) is Cedar's president and chief executive, Cadmus's director and chairman, and Citadel's and CTC's president (id., ¶ 25).
Brian and his wife, Tracy, reside in North Carolina (id., ¶¶ 5, 11 and 346). Defendants Seyed Morteza Vanaki (Vanaki) and Andrew George Michael (Michael) reside in the United Kingdom (id., ¶¶ 12-13). EHG LTD is a Bermuda corporation with a principal address in Bermuda (id., ¶ 6). EHG LLC is a North Carolina limited liability company with a principal address in North Carolina (id., ¶ 7). EHG Capital, EHG Equities and Lilliham are United Kingdom private limited liability companies with addresses in the United Kingdom (id., ¶¶ 8-10). eCreative is an Iowa limited liability company with a principal address in North Carolina (id., ¶ 20). Three Wide is an Iowa limited liability company with a principal address in North Carolina (id., ¶ 19). EHG LTD, EHG LLC, EHG Capital, EHG Equities, Lilliham, eCreative, and Three Wide are all engaged in the business of providing financial trading and related services (id., ¶ 29). Brian is the president and chief executive officer of EHG LTD and EHG LLC (id., ¶¶ 30-31). Brian, Tracy, Michael and Vanaki are directors, officers, managing members, members, principals, shareholders and/or registered agents in EHG LTD, EHG LLC, [*2]EHG Capital, EHG Equities, Lilliham, eCreative, and Three Wide (id., ¶¶ 30-57).
Defendant Gulf Atlantic Traders, LLC (Gulf), a Florida limited liability company in Naples, Florida, is in the business of providing financial trading services (id., ¶¶ 16 and 66). Defendants Chris Cioffi (Cioffi) and Carr, both domiciled in Florida, are Gulf's officers, managers, managing members and principals; Cioffi is also Gulf's vice president (collectively with Gulf, the Gulf Defendants) (id., ¶¶ 14-15 and 67-68).
CAT is a Nevada limited liability company based in Nevada that provides accounting and financial transactional services (id., ¶¶ 17 and 76). Kent, who resides in California, is a director, officer, shareholder and/or principal of CAT (id., ¶¶ 18 and 77).
A. The First Bucket PPMs
In March 2015, Cioffi introduced Chehab to a trading and investment opportunity (id., ¶¶ 101-103). The concept involved using a standby letter of credit (SBLC) to trade in fixed investment securities for profit and involved the purchase of debentures in EHG LTD through a private placement memorandum (PPM) (id., ¶¶ 101-104). Trades would be conducted through an account at nonparty Volks Bank (id., ¶ 105). Cioffi introduced Brian as his "partner" and the trader handling the investment (id., ¶ 103). Cedar agreed to fund and manage the investment, but a different entity would execute each PPM (id., ¶ 108).
1. The March PPM
On March 20, 2015, Chehab, for Cadmus, and Brian, for EHG LTD, executed PPM no. 03112015 (the March PPM) (id., ¶¶ 109-110; NYSCEF Doc No. 214, Brian aff, exhibit A at 21-23). Regarding operating profits and revenue sharing, the March PPM provided:
"The Debentures will entitle the subscriber to be paid a monthly return on investment of 2% monthly with an additional share of operating profits resulting from the business operations of the company. The share of operating profits distributed to the subscriber in addition to the 2% monthly return shall be between to an estimated 0%-6% of the subscriber's investment principle monthly and shall have a return ceiling of 6%"
(NYSCEF Doc No. 214 at 6). The March PPM stated that "[t]he proceeds will be deployed for the buying and selling of global energy based contracts as well as bank managed buy/sells of MTN Debentures and/or Bonds through a diversified mix of Enterprise Holdings Group, Ltd's global resources and banking relationships" (id.). The March PPM stated the offering term would expire on December 31, 2015 or earlier (id. at 7). Chehab, for Cadmus, and Cioffi and Carr, for "Gulf Atlantic Trading, LLC/Enterprise Holdings Group, Ltd," executed a lease agreement, under which Cadmus leased a $20 million SBLC from nonparty Standard Chartered Bank London (Standard), and a separate escrow agreement related to the investment (NYSCEF Doc No. 72, ¶ 112).
Between March 12 and April 17, Cedar wired a total of $800,000 from its Citibank account to an account associated with Gulf (id., ¶ 111; NYSCEF Doc No. 318, Chehab affirmation, exhibit F at 4-6). The investment resulted in the purchase of 20,000 debentures in EHG LTD and $12,600 deployed in trading (NYSCEF Doc No. 72, ¶ 113). The first month of trading yielded a $315,000 return, which was wired to Cedar's account on June 19 (id., ¶ 117; NYSCEF Doc No. 293, Chehab aff, exhibit K at 1). A statement for the June trading period showed a $688,746, or 5.46%, return, which was not paid (NYSCEF Doc No. 72, ¶¶ 118-119). [*3]A statement for the July trading period showed a $737,100, or 5.85%, return [FN1]
(id., ¶ 120). Defendants did not issue a monthly statement or a return for the August trading period (id., ¶ 121).
2. The April PPM
On April 16, 2015, Chehab, on behalf of Cadmus, and Brian, on behalf of EHG LTD, executed PPM no. 04032015 (the April PPM) (NYSCEF Doc No. 72, ¶¶ 123-124; NYSCEF Doc No. 215, Brian aff, exhibit B at 21-23). The April PPM contained the same terms regarding operating profits, revenue sharing, use of proceeds, and expiration date as the March PPM (NYSCEF Doc No. 215 at 6-7). Chehab, for Cadmus, and Cioffi and Carr, for "Gulf Atlantic Trading, LLC/Enterprise Holdings Group, Ltd," executed a lease agreement for the lease of a $50 million SBLC from Standard and a separate escrow agreement (NYSCEF Doc No. 72, ¶ 126).
On April 17, Cedar wired $875,000 from its Citibank account to an account associated with Gulf (id., ¶ 125; NYSCEF Doc No. 318 at 6). The investment resulted in the purchase of 50 million debentures in EHG LTD and $13 million deployed in trading (NYSCEF Doc No. 72, ¶ 127). Trading in June yielded $580,580, or 4.466%, return, and trading in July produced a $682,500, or 5.25%, return, but the returns were not paid (id., ¶¶ 133-134). No monthly statement or return was issued for the August trading period (id., ¶ 135).
3. The July PPM
On July 1, 2015, nonparty David Michael Thompson, for CTC, and Brian, for EHG LTD, executed PPM no. 07-01-0052 (the July PPM) (id., ¶ 137; NYSCEF Doc No. 216, Brian aff, exhibit C at 21-23). The July PPM contained the same operating profits, revenue sharing, use of proceeds, and expiration date provisions as the March PPM (NYSCEF Doc No. 216 at 6-7). Cadmus and Cioffi and Carr, for "Gulf Atlantic Trading, LLC/Enterprise Holdings Group, Ltd," executed a lease agreement, under which Cadmus leased a $20.4 million SBLC, and a separate escrow agreement (NYSCEF Doc No. 72, ¶ 139). Cioffi signed the escrow agreement on behalf of "Gulf Atlantic Trading, LLC/Enterprise Holdings Group, Ltd" (id.).
On July 10, Cedar wired $420,000 from its Citibank account to an account associated with Gulf (id., ¶ 138; NYSCEF Doc No. 318 at 14). The investment resulted in the purchase of 30,000 debentures in EHG LTD and $20.4 million deployed in trading (NYSCEF Doc No. 72, ¶ 140). No monthly statement or return was issued for the July PPM (id., ¶ 144).
B. The Wind-Up of the First Bucket PPMs
By letter dated September 3, 2015, Brian, on behalf of the "Board of Enterprise Holdings Group LLC and Enterprise Holdings Group, Ltd (EHG)," announced that it was in the subscribers' best interest to terminate and wind-up the March, April and July PPMs (collectively, the First Bucket PPMs) and distribute the assets to subscribers (NYSCEF Doc No. 288, Chehab aff, exhibit F at 1). The letter announced that the First Bucket PPMs would terminate effective September 3, and that EHG would "proceed to wind-up the [First Bucket] PPM[s] by satisfying all outstanding debts and liabilities, complete consolidated accounting requirements, and thereafter distribute the remaining PPM assets to subscribers" (id.). Subscribers were entitled to [*4]receive a pro rata share of the First Bucket PPMs' net assets based on each subscriber's percentage unit holding, and that cash and other assets would be distributed as soon as practicable after October 1, with an anticipated wind-up completed by October 15 (id. at 1-2).
On September 17, 2015, Brian, for the "Board of Enterprise Holdings Group LLC and Enterprise Holdings Group, Ltd (EHG)," issued separate notices setting forth the final distribution amounts: $2,841,416 for the March PPM, $4,650,455 for the April PPM, and $1,308,900 for the July PPM (NYSCEF Doc No. 289, Chehab aff, exhibit G at 1-3). Chehab executed three separate subscriber acknowledgments dated September 17, 2015 (collectively, the First Bucket PPM Wind-Ups) confirming that he had read, reviewed, and understood the notices of final distribution and accepted the final calculations (id.).
On October 14, 2015, Kent, on behalf of CAT, sent Chehab letters advising that CAT was "responsible for the custodial holding, organization, and distribution of the wind-up profits to EHG's investors (subscribers)"; confirming that "Brian Lillie, working through Enterprise Holdings Group LLC and Enterprise Holdings Group, Ltd., has assigned equity rights, via the remaining funds from the wind-up" to Cadmus or CTC; and confirming that Cadmus was entitled to $2,842,416 and $4,650,455 for the March and April PPMs and that CTC was entitled to $1,308,900 for the July PPM (NYSCEF Doc No. 291, Chehab aff, exhibit H). The letters stated that "the funds would be delivered from the first available funds upon the closing of the wind-up and final approval of audited financials" (id.). Chehab instructed CAT to wire the funds to Cedar's Citibank account (id.). The funds were not paid, with the CAT Defendants repeatedly representing that the funds were tied up with various banks (NYSCEF Doc No. 72, ¶¶ 174-175). Brian made similar representations (id., ¶¶ 176-177), which he "back[ed] up" with correspondence from an attorney at nonparty Gowling Lafleur Henderson LLP (Gowling), a Canadian law firm that had been retained by "EHG" to assist in transferring proceeds from the First Bucket PPMs (id., ¶¶ 178-179).
C. The Second Bucket PPMs
In August 2015, Brian approached Chehab about investing in a similar scheme involving EHG LLC that would yield significantly greater net returns than the First Bucket PPMs (id., ¶¶ 180-183).
1. The September PPM
On September 30, 2015, Chehab, for Cedar, and Brian, for EHG LLC, executed PPM no. CC070115-1401 (the September PPM) (id., ¶¶ 184-185; NYSCEF Doc No. 217, Brian aff, exhibit D at 20-21). The September PPM provided that "[t]he Debentures will entitle the subscriber to be paid an estimated monthly return on investment of 50%-60% monthly resulting from the business operation of the company on a best efforts basis" and that "proceeds will be deployed for the buying and selling of domestic and global soft commodity based contracts, margining of US Treasury Bonds for collateral enhancement, as well as certain bank managed buy/sells of MTN Debentures and/or Bonds through a diversified mix of Enterprise Holding Group LLC's global resources and banking relationships" (NYSCEF Doc No. 217 at 5). The September PPM would terminate on December 31, 2015 or earlier (id. at 2).
On October 5, Cedar wired $450,000 from its Citibank account to a Charles Schwab & Co. (Schwab) account associated with EHG LLC, and an additional $450,000 was credited from the First Bucket PPM wind-up proceeds, making for a total investment of $900,000 (NYSCEF Doc No. 72, ¶ 186; NYSCEF Doc No. 327, Chehab aff, exhibit O at 4). The investment resulted in the purchase of 900 debentures at $1,000 each, and a vested leveraged capital position of $4.5 [*5]million, which was equal to five times the $900,000 investment (NYSCEF Doc No. 72, ¶ 187). The first month of trading yielded a return of $225,000, or 5% of the leveraged $4.5 million investment (id., ¶ 191). The return was not paid and was "purportedly rolled over," thereby increasing Cedar's leveraged capital to $4.725 million (id., ¶ 192). The second month of trading produced a return of $222,500, or 4.762% of $4.725 million, which was not paid (id., ¶¶ 193-194). No other monthly statements were issued (id., ¶ 195).
2. The November PPM
On November 2, 2015, Chehab, for Cedar, and Brian, for EHG LLC, executed PPM no. CC070115-1403 (the November PPM) (NYSCEF Doc No. 72, ¶ 197; NYSCEF Doc No. 218, Brian aff, exhibit E at 21-22). The November PPM stated that "[t]he Debentures will entitle the subscriber to be paid an estimated monthly return on investment of 94%+ monthly resulting from the business operation of the company, and increased leverage, on a best efforts basis" (NYSCEF Doc No. 218 at 5). The November PPM contained the use of proceeds and termination provisions as in the September PPM (id. at 5-6).
On November 2, Cedar wired $1.5 million from its Citibank account to a Schwab account associated with EHG LLC (NYSCEF Doc No. 327 at 7). The investment resulted in the purchase of 1,500 debentures at a cost of $1,000.00 each, a vested leveraged capital position of $2.225 million, and a total capital position of $12 million (NYSCEF Doc No. 72, ¶ 200; NYSCEF Doc No. 218 at 21). The first month of trading yielded a return of $1,567,280, or 13.060% of the leveraged investment (NYSCEF Doc No. 72, ¶ 204). The return was not paid and was "rolled over," increasing the leveraged position to $13.155 million, though the complaint alleges there is a discrepancy of $412,280 (id., ¶ 205). The second month of trading produced a return of $997,720, or 7.354% of the leveraged investment (id., ¶ 206). No other monthly statements and no returns were issued (id., ¶¶ 207-208).
D. The Settlement
On March 7, 2016, Brian issued a letter to Cadmus and CTC titled "Letter Agreement — Wind-Up Distribution of PPM" (the March 7 Letter), which summarized the returns due on the First Bucket PPMs (NYSCEF Doc No. 322, Chehab aff, exhibit J at 3). The March 7 Letter indicated that $2.095 million had been invested in the First Bucket PPMs, of which $970,000 had been repaid, leaving a balance of $1.125 million together with $6,706,771 in proceeds from the wind-up of the First Bucket PPMs to be repaid (id.). The letter proposed that "EHG," defined as EHG LTD and EHG LLC, would pay Cadmus and CTC $1.125 million within five days of execution of the letter, and that EHG would make good faith efforts to pay the $6,706,771 in wind-up proceeds within 90 days (id.). The March 7 Letter also proposed that the investor shall not take any action or make any claim related to the First Bucket PPMs in that 90-day payment period, and that each investor shall execute a release in favor EHG and Gulf as their agent (id. at 3 and 12).
Chehab responded to Brian by letter dated March 8, 2016 (the March 8 Letter) purporting to "memorialize our mutual understanding and agreement in regards to outstanding payments due to Cedar Capital Management Group, Cadmus Asset Management, CTC Trading and Citadel Holdings (together referred to has CADMUS)" (id. at 1). The March 8 Letter states that, "[i]n addition to the information provided in the [March 7 Letter]," within five days of signing of the "Windup Letter Agreement-EHG PPM (CADMUS)," Gowling, representing EHG, would transfer $1.125 million into an account designated by Cadmus and that EHG would transfer an additional $75,000 to that same account (id.). EHG would pay half of the $6,706,771 in wind-up [*6]proceeds, or $3,353,386, to Cadmus the week of March 14, 2016, and the remaining half, or $3,353,386, within 30 days thereafter (id.). The March 8 Letter also proposed that EHG pay the unpaid profit distributions and invested principal capital on the September and November PPMs (together, the Second Bucket PPMs) (id. at 1-2). Payments on the September PPM were to be made the week of March 14, 2016 as follows: $1.15 million for the November 2015 trading period; $1.410 million for the December 2015 trading period; and $1.5 million of invested capital principal (id.). Payments on the November PPM were to be made the week of March 14, 2016 as follows: $450,000 for the November and December 2015 trading periods, and $900,000 as invested capital principal (id.). Chehab agreed that Cadmus would not initiate action against EHG during the 90-day no-action period proposed in the March 7 Letter, but added:
"should Wael Chehab or any of the CADMUS entities be engaged legally, of which results in formal litigation proceedings prior to the end of the 90 day period, by one or more of the clients of which Wael Chehab has placed funds into an EHG PPM, Wael Chehab and CADMUS reserve the right to require EHG assist in legal fees as a result of the action, however, may not bring EHG into the action itself without the express written consent of EHG. EHG agrees to work with CADMUS and exert its best efforts and prioritize the release of funds in order to avoid such action being brought forward in case of delays and agrees to assist CADMUS in mitigating the effects of such legal action should it take place by expediting the release of such funds"
(id. at 2). 
Chehab executed the March 7 and March 8 Letters (together, the Settlement) for Cadmus, defined as Cedar, Cadmus., CTC, and Citadel (id. at 2 and 5). Brian executed Settlement for "EHG (Enterprise Holdings Group LLC., Enterprise Holdings Group, Ltd.)" (id. at 2). Cedar received only $130,000 of the monies due under the Settlement (NYSCEF Doc No. 72, ¶ 235).
It is alleged, upon information and belief, that each of the individual defendants is an officer, director, manager, managing member, member, principal and/or shareholder of each corporate defendant and that each defendant is an alter ego of every other defendant (id., ¶¶ 61, 72, 81, 87 and 89). Each individual defendant is alleged, upon information and belief, to have failed to observe the corporate formalities required by law and used the corporate shield of every other corporate defendant to mask their malfeasant activities (id., ¶¶ 59, 64, 70, 74, 79, 84 and 92). It is alleged, upon information and belief, that each individual defendant dominated each corporate defendant, and that there was a commingling of accounts between each defendant and such that there was no distinction between them (id., ¶¶ 66, 62, 71, 73, 80, 82, 88 and 90). It is alleged, upon information and belief, that the individual defendants undercapitalized each corporate defendant [FN2]
(id., ¶¶ 63, 83 and 91). It is alleged, upon information and belief, that defendants transferred funds invested in one of the corporate defendants to the corporate or personal bank accounts of other defendants; used corporate funds to pay for the expenses of other defendants, including the personal expenses of the individual defendants; transferred funds between each defendant; used equipment and assets between the defendants interchangeably; paid debts incurred by one defendant with funds from other defendants, including the personal debts of the individual defendants; and failed to hold corporate meetings, maintain corporate [*7]minutes, and elect directors, officers and/or managers (id., ¶¶ 65, 75, 85 and 93). Furthermore, each defendant is alleged, upon information and belief, to have dominated every other defendant in order to commit a wrong against plaintiffs (id., ¶ 94). In September 2016, EHG LTD was dissolved and struck off the Bermuda Registrar of Companies (id., ¶ 236). EHG Equities, EHG Capital, Lilliham and Gulf LLC have also been dissolved (id., ¶ 237). The dissolutions occurred before the Settlement amount was fully paid (id., ¶ 238).
Procedural History
Plaintiffs commenced this action on November 4, 2020 (NYSCEF Doc No. 1). Motions brought by Carr, the CAT Defendants and the EHG Defendants to dismiss the complaint were denied, and plaintiffs' motion for leave to amend the complaint was granted (NYSCEF Doc Nos. 203-208).
The amended complaint (the complaint) pleads 26 causes of action. The first eight causes of action plead claims for fraud and allege that Cioffi and/or Brian intentionally made false representations to induce Cedar, Cadmus, CTC and/or Citadel to invest in and execute the First Bucket PPMs and related lease and escrow agreements, the Second Bucket PPMs, and the Settlement (NYSCEF Doc No. 72, ¶¶ 242-323). The ninth cause of action for fraud alleges that Brian and the CAT Defendants falsely represented that the principal and returns on the investments would be paid to induce plaintiffs to refrain from bringing litigation or taking other action (id., ¶¶ 328-337). The tenth cause of action pleads a claim against all defendants for civil conspiracy to commit fraud (id., ¶¶ 341-356). The eleventh cause of cause of action for aiding and abetting fraud is pled against all defendants (id., ¶¶ 360-361). The twelfth through sixteenth causes of action plead claims for breach of contract related to the Settlement (id., ¶¶ 365-400). The seventeenth and eighteenth causes of action assert breach of contract claims on behalf of Cedar and CTC, respectively, related to the September PPM (id., ¶¶ 402-416). The nineteenth and twentieth causes of action for breach of contract on behalf of Cedar and Citadel, respectively, relate to the November PPM (id., ¶¶ 418-432). The twenty-first and twenty-second causes of action plead claims for breach of contract on behalf of Cadmus and Cedar related to the First Bucket PPM Wind-Ups (id., ¶¶ 434-449). The twenty-third and twenty-fourth causes of action for breach of contract on behalf of Cadmus relate to the March and April PPMs (id., ¶¶ 451-461). The twenty-fifth cause of action pleads a claim for breach of contract on behalf of CTC related to the July PPM (id., ¶¶ 463-467). The twenty-sixth cause of action for unjust enrichment is pled against all defendants (id., ¶¶ 469-474). The complaint seeks judgment against each defendant, jointly and severally, on each cause of action, as each defendant is alleged to be the alter ego of every other defendant (id., ¶ 89).
Plaintiffs' motion for a default judgment on the issue of Gulf's liability was granted, but the motion against Cioffi was denied because the alter ego allegations were insufficient (NYSCEF Doc No. 364). Plaintiffs' motion for a default judgment on the issue of CAT's liability has been granted but only as to the ninth and tenth causes of action (NYSCEF Doc No. 365).
The CAT Defendants, the EHG Defendants, and Carr now move separately to dismiss the [*8]complaint.[FN3]
The motions are supported by affidavits from Kent, Brian, Carr and Cioffi, the PPMs, and other exhibits. Plaintiffs opposes all three motions and proffers affidavits from Chehab, the executed PPMs and Settlement, and other exhibits.
Discussion
A motion brought under CPLR 3211 (a) (7) addresses the sufficiency of a pleading (see Aristy-Farer v State of New York, 29 NY3d 501, 509 [2017]). The court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "[I]f from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law," the motion will be denied (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
Dismissal under CPLR 3211 (a) (1) is warranted "where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]). "A paper will qualify as 'documentary evidence' only if it satisfies the following criteria: (1) it is 'unambiguous'; (2) it is of 'undisputed authenticity'; and (3) its contents are 'essentially undeniable'" (VXI Lux Holdco S.A.R.L. v Sic Holdings, LLC, 171 AD3d 189, 193 [1st Dept 2019], quoting Fontanetta v John Doe 1, 73 AD3d 78, 86-87 [2d Dept 2010]).
The party moving for dismissal under CPLR 3211 (a) (5) bears the burden of demonstrating that the time within which to sue has expired (Flintlock Constr. Servs., LLC v Rubin, Fiorella & Friedman, LLP, 188 AD3d 530, 531 [1st Dept 2020]). The party opposing dismissal bears the burden of raising a question of fact "whether the statute of limitations has been tolled, an exception to the limitations period is applicable, or the plaintiff actually commenced the action within the applicable limitations period" (id. [internal quotation marks and citation omitted]).
To successfully oppose a motion for lack of personal jurisdiction brought under CPLR 3211 (a) (8), "the plaintiff must come forward with sufficient evidence, through affidavits and relevant documents, to prove the existence of jurisdiction" (State of New York v Vayu, Inc., 39 NY3d 330, 339 [2023] [internal quotation marks and citations omitted]). The plaintiff must also show that the exercise of jurisdiction comports with federal due process (see Williams v Beemiller, Inc., 33 NY3d 523, 528 [2019]).
A. The Motion to Dismiss brought by CAT
At the outset, the motion to dismiss filed on behalf of CAT is denied. CAT is a limited liability company, and an "LLC may only be represented by an attorney and not by one of its members who is not an attorney admitted to practice in the state of New York" (Michael Reilly Design, Inc. v Houraney, 40 AD3d 592, 593 [2d Dept 2007]). Kent is an individual defendant and a manager of CAT. He is not an attorney licensed to practice in this state. As such, the answer interposed by Kent on CAT's behalf (NYSCEF Doc No. 38) is a nullity (Boente v Peter C. Kurth Off. of Architecture & Planning, P.C., 113 AD3d 803, 804 [2d Dept 2014]). In any event, a default judgment has already been granted against CAT on the ninth and tenth causes of [*9]action.[FN4]

B. Subject Matter Jurisdiction
Kent argues the court does not have jurisdiction "over any issue pertaining" to him (NYSCEF Doc No. 236, Kent aff, ¶ 3). This contention implicates subject matter jurisdiction.
The "Supreme Court 'is a court of original, unlimited and unqualified jurisdiction'" (Security Pac. Natl. Bank v Evans, 31 AD3d 278, 280 [1st Dept 2006], appeal dismissed 8 NY3d 837 [2007], quoting Kagen v Kagen, 21 NY2d 532, 537 [1968]; see also NY Const, art VI, § 7 [a]). Thus, Kent's motion insofar as it seeks dismissal based on the lack of subject matter jurisdiction is denied.
C. Personal Jurisdiction over Kent
Kent contends the complaint should be dismissed for lack of personal jurisdiction. He avers that he does not transact business or have contracts with anyone in New York; does not provide goods or services in this state; does not solicit business or derive revenue from services or products provided in New York; has no expectation of any business or revenue here; does not own or possess property or reside in New York; and did not commit a tort within the state or commit an act that caused injury to person or property (NYSCEF Doc No. 236, ¶ 3). Kent avers the CAT Defendants are authorized to engage in transactions in Europe and Singapore but not the United States (id.). He states that CAT has no contract or association with plaintiffs (NYSCEF Doc No. 238, Kent aff, appendix at 1). Kent also claims the funds to be distributed to plaintiffs were to come from an unrelated private transaction organized by nonparty Andrew Clarke of Lloyds TSB Bank PLC that Brian and Kent had invested in (NYSCEF Doc No. 239, Kent aff, appendix at 1-2) (emphasis removed). Kent states that there were no funds to distribute to plaintiffs because no funds were ever generated from that unrelated transaction (id. at 3).
Plaintiffs cite CPLR 302 (a) (1) and (a) (3) (ii) as predicates for specific personal jurisdiction over Kent, a California resident, and argue that he is subject to jurisdiction based on an alter ego theory. Plaintiffs submit that an evidentiary hearing or jurisdictional discovery on the issue of personal jurisdiction is unnecessary (NYSCEF Doc No. 331, plaintiffs' mem of law at 4).
CPLR 302 (a) (1) allows the court to exercise specific jurisdiction over a non-domiciliary "who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." Under CPLR 302 (a) (3) (ii), the court may exercise specific jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state if he expects or should reasonably expect the act to have the act to have consequences in the state and derives substantial revenue from interstate or international commerce." 
Regarding alter ego jurisdiction, "if a court has jurisdiction over a corporation, it may obtain jurisdiction over a corporate officer or shareholder by disregarding the corporate entity" (Kinetic Instruments, Inc. v Lares, 802 F Supp 976, 985 [SD NY 1992]). Jurisdiction over an alter ego is "appropriate when one 'entity truly dominates another so that the two are indistinguishable for practical purposes'" (George Moundreas & Co SA v Jinhai Intelligent Mfg. [*10]Co. Ltd., 2021 WL 168930, *8, 2021 US Dist LEXIS 9588, *21 [SD NY, Jan. 18, 2021, No. 20-CV-2626 (VEC)]). Determining whether jurisdiction over an alter ego exists "requires application of a 'less onerous standard' than that necessary for equity to pierce the corporate veil for liability purposes" (Cesfin Ventures LLC v Al Ghaith Holding Co. PJSC, 2022 WL 18859076, *4, 2022 US Dist LEXIS 223858, *9-10 [SD NY, Dec. 10, 2022, No. 1:21-cv-01395 (PGG)(SDA)] [citation omitted]). For jurisdictional purposes, the court considers the following factors to determine whether one party is the alter ego of another:
"the failure to observe corporate formalities; intermingling of personal and corporate funds; overlap in ownership and directors; shared office space and phone numbers; whether the alter egos and the corporation dealt with one another at arm's length; the payment or guarantee of debts of the alter egos by the corporation in question; and whether the corporation in question had property that was used by the alter egos as if it were their own"
(2022 WL 18859076, *5, 2022 US Dist LEXIS 223858, *11; see generally Wm. Passalacqua Bldrs., Inc. v Resnick Developers S., Inc., 933 F2d 131, 139 [2d Cir 1991]). Key to any such determination is "whether the allegedly controlled entity 'was a shell' for the allegedly controlling party" (International Equity Investments, Inc. v Opportunity Equity Partners, Ltd., 475 F Supp 2d 456, 459 [SD NY 2007] [citation omitted]). Once alter ego status is established, the alter egos are treated as one entity for purposes of personal jurisdiction (Transfield ER Cape Ltd. v Industrial Carriers, Inc., 571 F3d 221, 224 [2d Cir 2009] [citation omitted]). The exercise of jurisdiction over a nondomiciliary under an alter ego theory also does not offend federal due process [FN5]
 (Clingerman v Ali, 212 AD3d 572, 572 [1st Dept 2023]).
The conclusory allegations in the complaint are insufficient to establish that Kent is the alter ego of any other defendant so as to provide a basis for specific jurisdiction over him (see Edmar Fin. Co., LLC v Currenex, Inc., 2023 WL 3570017, *24, 2023 US Dist LEXIS 87620, *59 [SD NY, May 18, 2023, No. 21-cv-6598 (LAK)] [bare allegations of control without specific allegations about defendants' management, roles and relationships with each other not enough for alter ego jurisdiction]; Rudersdal v Harris, 2020 WL 9815180, *11, 2020 US Dist LEXIS 255673, *37-38 [SD NY, Aug. 18, 2020, No. 1:18-cv-11072-GHW], report and recommendation adopted 2020 WL 5836517, 2020 US Dist LEXIS 181960 [SD NY, Sept. 30, 2020, No. 1:18-cv-11072-GHW] [conclusory alter ego allegations insufficient]; Bank of Am. v Apollo Enter. Solutions, LLC, 2010 WL 4323273, *5, 2010 US Dist LEXIS 116396, *14 [SD NY, Nov. 1, 2010, No. 10 Civ. 5707 (DLC)] [no jurisdiction where conclusory allegations of alter ego status were made without factual support]). The complaint alleges that Kent is the alter ego of CAT and every other defendant but general allegations of alter ego status made solely [*11]upon "information and belief" will not suffice (see 501 Fifth Ave. Co. LLC v Alvona LLC., 110 AD3d 494, 494 [1st Dept 2013]; see also Apfelberg v East 56th Plaza, Inc., 78 AD2d 606, 607 [1st Dept 1980], appeal dismissed 54 NY2d 608 [1981] [allegations made entirely "upon information and belief" without identification of the source of the information lack probative value]). The complaint does not allege that Kent abused his position in CAT for personal gain (see Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v Elman Invs., Inc., 117 AD3d 447, 450 [1st Dept 2014]), or that he formed CAT for an illegitimate purpose (see ABN AMRO Bank, N.V. v MBIA Inc., 81 AD3d 237, 245 [1st Dept 2011], mod 17 NY3d 208 [2011]). That Kent is alleged to be an officer, director, manager, shareholder, member, managing member or principal in CAT and every other corporate defendant (NYSCEF Doc No. 72, ¶¶ 77 and 87) is insufficient proof of complete domination (see Matter of Island Seafood Co. v Golub Corp., 303 AD2d 892, 895 [3d Dept 2003]).
Chehab's affidavit and the exhibits annexed thereto fail to offer sufficient factual support to establish alter ego jurisdiction. Chehab largely repeats the allegations in the complaint, which are conclusory. The documents also fail to support the allegation that Kent dominated or extensively controlled CAT or the other defendants (compare Avilon Auto. Group v Leontiev, 168 AD3d 78, 89 [1st Dept 2019] [plaintiffs "cited evidence tending to show" that the individual defendant dominated a corporation and misused the corporate form to advance a fraudulent scheme]), or that Kent used CAT's funds to pay for his personal expenses (compare Clingerman, 212 AD3d at 572 [complaint contained specific allegations that defendant withdrew substantial sums of money from the corporation's account to pay for his family's expenses]). Kent's letters and emails addressed to Chehab all bear CAT's name and corporate addresses, only (NYSCEF Doc No. 313; NYSCEF Doc No. 330, Chehab aff, exhibit R). The correspondence does not establish or even imply that Kent was affiliated with the other defendants through a shared corporate address or telephone number or an overlap in management. Thus, plaintiffs have not satisfied their burden of demonstrating that jurisdiction is proper under an alter ego theory. The complaint against Kent is dismissed for lack of personal jurisdiction.
C. Whether the Claims are Time-Barred
Carr argues the claims against him are time-barred because he had no relationship with plaintiffs after the April PPM was issued. Because there was no legal connection, contract or debt owed, and given plaintiffs' knowledge of his lack of involvement in the transactions at issue, Carr claims they are not entitled to invoke a six-year statute of limitations. Instead, he argues that plaintiffs had one year from 2015 to commence an action to recover their losses.
Plaintiffs contend that, under CPLR 211, claims to pierce the corporate veil to enforce a money judgment are subject to a 20-year statute of limitations that begins to run once a judgment has been entered. No money judgment has been entered, and therefore, plaintiffs assert that the claims are timely. Plaintiffs also maintain that a six-year statute of limitations governs their claims.
"[A] fraud claim must be brought within the longer of 'six years from the date the cause of action accrued or two years from the time the plaintiff could with reasonable diligence have discovered [the fraud]'" (Aozora Bank, Ltd. v Credit Suisse Group, 144 AD3d 437, 438 [1st Dept 2016], lv denied 28 NY3d 914 [2017], quoting CPLR 213 [8]). Claims for aiding and abetting fraud and conspiracy to commit fraud are also governed by CPLR 213 (8) (Tahair v Narkis, 216 AD3d 557, 559 [1st Dept 2023]). Breach of contract and unjust enrichment claims are subject to a six-year statute of limitations (see CPLR 213 [2]; Simon v FrancInvest, S.A., 192 [*12]AD3d 565, 567 [1st Dept 2021], appeal dismissed 37 NY3d 1005 [2021]).
Here, Carr has failed to carry his burden of demonstrating that the time within which plaintiffs may sue has expired (see MB Moda Borse S.R.L. v Marks, 202 AD3d 441, 442 [1st Dept 2022]). Carr fails to cite any provision of the CPLR in support of his contention that a one-year limitations period governs the claims. The absence of contact between him and plaintiffs following the issuance of the April PPM does not render the claims untimely. Carr cites no other factual or legal basis for his belief that the claims against him are time-barred. Accordingly, Carr's motion insofar as it seeks dismissal on statute of limitations grounds is denied.
D. Whether the Complaint States a Cause of Action
The EHG Defendants present six arguments in support of dismissal. First, they contend that the complaint should be dismissed for impermissible group pleading and for failing to articulate the specific wrongful acts on the part of each defendant, in contravention of CPLR 3013 and 3016 (b). Second, the alter ego allegations are conclusory. Third, the breach of contract claims against Brian should be dismissed because he was an agent for a disclosed principal and did not intend to substitute or superadd his liability or bind himself personally to any contract. Fourth, the fraud and unjust enrichment causes of action should be dismissed as duplicative of the breach of contract claims. Fifth, the conspiracy and aiding and abetting fraud claims should be dismissed in the absence of a viable underlying fraud claim. Sixth, the EHG Defendants assert that the statute of frauds bars the four causes of action for breach of the Settlement.
Carr argues the complaint fails to comport with CPLR 3013 and 3016 (b) and should be dismissed for lack of specificity. Carr submits that, as an agent for a disclosed principal, he cannot be held individually liable on the breach of contract claims. Furthermore, Carr alleges there is no documentary evidence showing that he is a member, owner or officer in Gulf. Carr avers that he owns no shares in Gulf, is not an officer or member manager, and has no authority, power or control over the company (NYSCEF Doc No. 277, Carr aff). Cioffi avers that he is Gulf's sole owner and member manager and that only he has the authority and power to control Gulf (NYSCEF Doc No. 277, Cioffi aff). The fraud and aiding and abetting fraud claims cannot be sustained because the alleged fraud relates to a contract. Last, Carr contends that the civil conspiracy cause of action should be dismissed in the absence of a viable underlying fraud claim.
Plaintiffs contend the complaint satisfies CPLR 3013 and 3016 (b) and contains specific allegations of alter ego liability sufficient to pierce the corporate veil.[FN6]

1. The Twelfth to Twenty-Fifth Causes of Action for Breach of Contract
A cause of action for breach of contract requires the existence of a valid agreement, the plaintiff's performance, the defendant's breach, and damages (Fawer v Shipkevich PLLC, 213 AD3d 408, 408 [1st Dept 2023]).
As applied here, the complaint suffers from numerous deficiencies. First, the eighteenth cause of action alleges that the September PPM is a valid contract between CTC and "[d]efendants, acting under the guise of EHG LLC" (NYSCEF Doc No. 72, ¶ 410). However, the complaint also alleges that Brian and Chehab determined Cedar, not CTC, would be the [*13]contracting party (id., ¶ 185). The twentieth cause of action alleges that the November PPM constitutes a valid contract between Citadel and "[d]efendants, acting under the guise of EHG LLC" (id., ¶ 426). However, the complaint also alleges that Brian and Chehab determined Cedar, not Citadel, would be the contracting party [FN7]
(id., ¶ 198). As such, CTC and Citadel were not parties to the September or November PPMs and cannot enforce them unless they were intended third-party beneficiaries to those agreements (see generally Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 45 [1985] [discussing intended third-party beneficiaries]). The complaint does not allege that CTC and Citadel were intended third-party beneficiaries.
Additionally, "[i]t is a general principle that only the parties to a contract are bound by its terms" (Highland Crusader Offshore Partners, L.P., 184 AD3d at 121). The contract claims all pertain to the First Bucket PPM Wind-ups, the First and Second Bucket PPMs, and the Settlement, but the complaint does not allege that Tracy, EHG Capital, EHG Equities, Lilliham, eCreative, and Three Wide were signatories to those agreements. The complaint alleges that Carr signed lease and escrow agreements (NYSCEF Doc No. 72, ¶¶ 112, 126 and 139), but it does not allege that he signed the First Bucket PPM Wind-ups, the First and Second Bucket PPMs or the Settlement. Additionally, EHG LTD executed the First Bucket PPMs, but not the Second Bucket PPMs. Similarly, EHG LLC executed the Second Bucket PPMs, but not the First Bucket PPMs.
Furthermore, "an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal" (Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1, 4 [1964] [internal quotation marks and citation omitted]). The signature blocks on the First and Second Bucket PPMs and the Settlement contain only a single line for Brian's signature as a representative of EHG LTD, EHG LLC, or both (see Georgia Malone & Co., Inc. v Rieder, 86 AD3d 406, 408 [1st Dept 2011], affd 19 NY3d 511 [2012], citing Salzman Sign Co. v Beck, 10 NY2d 63, 67 [1961] [discussing the general practice that an individual sign twice if the individual wished to be personally bound]). The single line indicates that Brian did not sign in personal capacity, and thus he did not intend to be personally bound to those agreements (see McMahon v Cobblestone Lofts Condominium, 161 AD3d 536, 537 [1st Dept 2018]). The complaint alleges that Carr executed the lease and escrow agreements on behalf of "Gulf Atlantic Trading, LLC/Enterprise Holdings Group, Ltd," and does not allege that he executed those agreements in his personal capacity (NYSCEF Doc No. 72, ¶¶ 112, 126 and 139).
Plaintiffs rely on an alter ego theory to extend liability on the contract claims to all defendants. To state a claim for alter ego liability, the plaintiff must allege (1) the complete domination of the corporation with respect to the transaction at issue and (2) that such domination was used to commit a fraud or wrong against the plaintiff resulting in injury (Baby Phat Holding Co., LLC v Kellwood Co., 123 AD3d 405, 407 [1st Dept 2014]). The complaint must plead "'particularized statements detailing fraud or other corporate misconduct' by individuals in complete control of the corporation'" (134 Emmut Props. LLC v Galaxy Light. 136, Inc., 211 AD3d 505, 505 [1st Dept 2022] [citation omitted]).
Applying these precepts, the allegations that the EHG Defendants were alter egos of each [*14]other, the Gulf Defendants, and the CAT Defendants are wholly conclusory. The complaint merely recites the typical veil-piercing factors, which is insufficient (G & Y Maintenance Corp. v Core Cont. Constr. LLC, 215 AD3d 553, 554 [1st Dept 2023]). The lack of specific factual allegations that the EHG Defendants completely dominated or controlled each other and every other defendant or abused the privilege of doing business in the corporate form renders the complaint deficient (see Ferro Fabricators, Inc. v 1807-1811 Park Ave. Dev. Corp., 127 AD3d 479, 480 [1st Dept 2015]; Andejo v South St. Seaport Ltd. Partnership, 40 AD3d 407, 407 [1st Dept 2007] [absence of particularized facts did not warrant piercing the corporate veil]). The complaint offers "nothing more than bald, unsubstantiated allegations that there was an abuse of the privilege of doing business in the corporate form" (Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d 964, 965 [2d Dept 2018]). Moreover, generalized allegations of alter ego liability made upon "information and belief," as is the case here, are insufficient to withstand a motion to dismiss (see 501 Fifth Ave. Co. LLC, 110 AD3d at 494). And while "a fact-laden claim to pierce the corporate veil is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018]), plaintiffs' claim that discovery is unnecessary does not excuse its failure to plead specific, particularized allegations detailing the alleged corporate misconduct (Yoviich v Montefiore Nyack Hosp., 212 AD3d 425, 426 [1st Dept 2023]).
Nonetheless, the allegations in the complaint, as supplemented by Chehab's affidavits and the documents submitted therewith, are sufficient, at this stage, to provide a factual basis that EHG LTD, EHG LLC and EHG Capital may have been alter egos of each other. A bank statement dated July 14, 2015, reflects a transfer of $315,000 from EHG LLC into Cedar's Citibank account (NYSCEF Doc No. 293 at 1). The sum represented the return made in the first month of trading on the March PPM (NYSCEF Doc No. 72, ¶ 117). EHG LTD, though, was the contracting entity on the March PPM (id., ¶ 110). Letters terminating the First Bucket PPMs were written on behalf of the "Board of Enterprise Holdings Group LLC and Enterprise Holdings Group, Ltd (EHG)" (NYSCEF Doc No. 288), but EHG LLC is not mentioned anywhere in the First Bucket PPMs. On November 11, 2015, EHG Capital wired $500,000 to Cedar's Citibank account (NYSCEF Doc No. 291, Chehab aff, exhibit I), which Chehab attests represents partial payment on the First Bucket PPMs (NYSCEF Doc No. 282, Chehab aff, ¶ 15). "Evidence of the payment of debts on behalf of a company, as in this case, can also be significant evidence of an alter ego relationship because it evidences control and a lack of regard for corporate formalities" (Classic Maritime, Inc. v Makmur, 646 F Supp 2d 364, 371 [SD NY 2009]). Additionally, EHG LTD was dissolved in September 2016 (NYSCEF Doc No. 295, Chehab aff, exhibit M) and EHG Capital was dissolved in April 2017 (NYSCEF Doc No. 294, Chehab aff, exhibit L at 2).
Plaintiffs' proof, however, fails to salvage the contract claims against Brian, Tracy, EHG Equities, Lilliham, eCreative, Three Wide, and Carr. A simple breach of contract, without more, is not a fraud or wrong that would warrant piercing the corporate veil (Skanska USA Bldg. Inc. v Atlantic Yards B2 Owner, LLC, 146 AD3d 1, 12 [1st Dept 2016], affd 31 NY3d 1002 [2018], rearg denied 31 NY3d 1141 [2018]). Given the deficiencies with respect to the alter ego allegations pled against these defendants, the twelfth through twenty-fifth causes of action against Brian, Tracy, EHG Equities, Lilliham, eCreative, Three Wide, and Carr must be dismissed as they were not parties to the contracts at issue (see P & HR Solutions, LLC v Ram Capital Funding, LLC, 195 AD3d 473, 473-474 [1st Dept 2021]).
[*15]2. The First through Ninth Causes of Action for Fraud
To state a cause of action for fraud, the plaintiff must plead "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]). Fraud claims must be pled with particularity, with the "circumstances constituting the wrong stated in detail" (CPLR 3016 [b]), including "who made the representations, when they were made and their substance, and when" (Orange Orch. Props. LLC v Gentry Unlimited, Inc., 191 AD3d 609, 609 [1st Dept 2021]). That said, the "[pleading] requirement should not be confused with unassailable proof of fraud" so long as the "facts are sufficient to permit a reasonable inference of the alleged conduct" (Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492 [2008]). 
A fraud claim is redundant of a breach of contract claim where the allegations concern an insincere promise to perform (see ID Beauty S.A.S. v Coty Inc. Headquarters, 164 AD3d 1186, 1186 [1st Dept 2018]). But, when there is a misrepresentation of present fact collateral to a contract, which induces a plaintiff to enter into a transaction, a fraud claim will not be dismissed as duplicative of a breach of contract claim (see GoSmile, Inc. v Levine, 81 AD3d 77, 81 [1st Dept 2010], lv dismissed 17 NY3d 782 [2011]). 
Here, the complaint is sufficiently specific as to the alleged fraudulent representations Brian, representing EHG LTD and EHG LLC, expressed to plaintiffs about a trading and investment concept. Nevertheless, the complaint fails to allege, with sufficient particularity, the specific false representations made by Tracy, EHG Equities, Lilliham, eCreative, Three Wide, and Carr to plaintiffs. CPLR 3013 requires statements in a pleading to be "sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." A complaint that fails to differentiate between the defendants is an improper group pleading (Principia Partners LLC v Swap Fin. Group, 194 AD3d 584, 584 [1st Dept 2021]; Aetna Cas. & Surety Co. v Merchants Mut. Ins. Co., 84 AD2d 736, 736 [1st Dept 1981] [complaint that collectively refers to defendants "without any specification as to the precise tortious conduct charged to a particular defendant" does not comport with CPLR 3013]). By crediting every alleged false representation made by Brian to every other defendant, collectively, as their alter ego, the complaint engages in impermissible group pleading. Such group pleading fails to satisfy CPLR 3013 and 3016 (b) (see Jonas v National Life Ins. Co., 147 AD3d 610, 612 [1st Dept 2017] [dismissing a fraud claim where the defendants were "impermissibly lump[ed] together"]; Barlow v Skroupa, 76 Misc 3d 587, 591 [Sup Ct, NY County 2022], affd 217 AD3d 620 [1st Dept 2023], citing Principia Partners LLC, 194 AD3d at 584 [same]), especially where the alter ego allegations are conclusory (see Cortlandt St. Recovery Corp. v Hellas Telecom., S.A.R.L., 47 Misc 3d 544, 572 n 11 [Sup Ct, NY County 2014], mod 142 AD3d 833 [1st Dept 2016], affd 31 NY3d 30 [2018] [conclusory alter ego allegations and group pleading insufficient to plead fraud]).
The complaint also fails to state a cause of action for fraud. The first through seventh causes of action are predicated upon Brian's alleged false representations that an investment in EHG LTD or EHG LLC would generate high monthly returns, with the First Bucket PPMs projected to yield a 2% monthly return and an estimated 0-6% return on the principal and the Second Bucket PPMs projected to yield a 94% monthly return (NYSCEF Doc No. 72, ¶¶ 244, 253, 263, 274-275, 285-286, 295-296, and 306-307). However, "[c]laims based upon [*16]defendants' projections of returns on investment are not actionable because such projections are merely statements of prediction or expectation" (ESBE Holdings, Inc. v Vanquish Acquisition Partners, LLC, 50 AD3d 397, 398 [1st Dept 2008] [fraud claims arising out of written agreements were duplicative of the breach of contract claims]; Dorfman Org. v Greater NY Mut. Ins. Co., 279 AD2d 437, 437 [1st Dept 2001], lv dismissed 96 NY2d 822 [2001] [assertion that a new account would be profitable was nonactionable opinion or puffery]).
The eighth cause of action alleges that Brian falsely represented that plaintiffs would be paid the distributions earned under the First and Second Bucket PPMs to induce them to enter into the Settlement (NYSCEF Doc No. 72, ¶¶ 316-318). The ninth cause of action alleges that Brian falsely represented that payments on the First Bucket and Second Bucket PPMs were forthcoming, and that plaintiffs relied on these representations when they executed the Settlement (id., ¶¶ 328-334). These alleged false representations pertain to an insincere promise to perform, which cannot support a claim for fraud (Cronos Group Ltd. v XComIP, LLC, 156 AD3d 54, 64-65 [1st Dept 2017] [fraud claim dismissed where the complaint failed to identify a promise collateral or extraneous to the parties' contract]).
A fraud claim should also be dismissed where it seeks damages identical as those recoverable on a breach of contract claim (id. at 65; MBIA Ins. Corp. v Credit Suisse Sec. (USA) LLC, 165 AD3d 108, 114 [1st Dept 2018]). The eighth and ninth causes of action for fraud related to the Settlement seek damages of $25 million, and the twelfth through sixteenth causes of action seek $25 million in damages for a breach of the Settlement. Accordingly, the first through ninth causes of action are dismissed against the EHG Defendants and Carr.
3. The Tenth Cause of Action for Civil Conspiracy to Commit Fraud
The EHG Defendants contend that the tenth cause of action should dismissed because a civil conspiracy to commit fraud is not an independent cause of action. Carr argues that he could not have contributed to a conspiracy because the complaint does not plead an underlying negligent misrepresentation, breach of contract or fraud perpetrated by him.
Plaintiffs maintain that the alter ego allegations are sufficient plead a civil conspiracy against all defendants. In the event the alter ego allegations are inadequately pled, the conspiracy cause of action should stand against the individual defendants who made the false representations.
A cause of action for civil conspiracy requires the plaintiff to "'demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury'" (Abacus Fed. Sav. Bank v Lim, 75 AD3d 472, 474 [1st Dept 2010] [citation omitted]). Civil conspiracy, though, is not an independent cause of action (Hoeffner v Orrick, Herrington & Sutcliffe LLP, 85 AD3d 457, 458 [1st Dept 2011]). Instead, the allegations of conspiracy are deemed part of the predicate torts to which they are relevant (Errant Gene Therapeutics, LLC v Sloan-Kettering Inst. for Cancer Research, 174 AD3d 473, 474 [1st Dept 2019], quoting Hoag v Chancellor, Inc., 246 AD2d 224, 230 [1st Dept 1998]). Because the fraud claims have not been dismissed against Gulf and CAT, the tenth cause of action for civil conspiracy is dismissed against the EHG Defendants and Carr as an independent cause of action, with the conspiracy allegations deemed to remain part of the fraud claims.
[*17]4. The Eleventh Cause of Action for Aiding and Abetting Fraud
The EHG Defendants contend that the eleventh cause of action for civil conspiracy to commit fraud should be dismissed absent a viable underlying fraud claim. Plaintiffs counter that the eleventh cause of action pleads a claim for aiding and abetting fraud, not civil conspiracy.
A cause of action for aiding and abetting fraud requires the plaintiff to plead "the existence of the underlying fraud, actual knowledge, and substantial assistance" Simon v FrancInvest, S.A., 192 AD3d at 569 [internal quotation marks and citation omitted]). The element of "actual knowledge need only be pleaded generally" (Oster v Kirschner, 77 AD3d 51, 55 [1st Dept 2010]). The claim must be pled with particularity (Latimore v Fuller, 127 AD3d 521, 522 [1st Dept 2015], citing CPLR 3016 [b]). 
The complaint herein alleges that "[d]efendants had actual knowledge of each of the respective Subject Frauds and provided substantial assistance" (NYSCEF Doc No. 72, ¶ 361). This allegation is inadequate to plead either actual knowledge or substantial assistance with the requisite particularity (see Gregor v Rossi, 120 AD3d 447, 448-449 [1st Dept 2014]), and improperly attributes conduct to all defendants, collectively (see Jonas, 147 AD3d at 612). The eleventh cause of action is dismissed against the EHG Defendants and Carr.
5. The Twenty-Sixth Cause of Action for Unjust Enrichment
The EHG Defendants argue that the unjust enrichment cause of action fails because it duplicates the contract claims. Plaintiffs claim the unjust enrichment cause of action should stand because they are allowed to plead in the alternative, as the EHG Defendants appear to contest the validity of the Settlement and the March PPM (NYSCEF Doc No. 282 at 5 n 6 and at 9 n 12). 
Unjust enrichment is "the receipt by one party of money or a benefit to which it is not entitled, at the expense of another" (Abacus Fed. Sav. Bank, 75 AD3d at 473). To state a claim for unjust enrichment, the "plaintiff must show that (1) the other party was enriched; (2) at that party's expense; and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (Kramer v Greene, 142 AD3d 438, 442 [1st Dept 2016] [internal quotation marks and citation omitted]). "[U]njust enrichment is not a catchall cause of action" (Corsello v Verizon NY, Inc., 18 NY3d 777, 790 [2012]), and is unavailable when a written contract governs the dispute (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388-389 [1987]).
Here, the complaint alleges that all defendants, collectively, have been unjustly enriched by failing to return the principal and by paying the returns generated on the First and Second Bucket PPMs (NYSCEF Doc No. 72, ¶¶ 470-472). A failure to make any distinction between defendants is an improper group pleading (Barlow, 76 Misc 3d at 595 [dismissing unjust enrichment claim for impermissible group pleading]). Moreover, the EHG Defendants do not dispute that the Settlement and the March PPM are valid contracts. The copy of the Settlement annexed to Brian's affidavit is the same as the copy of the Settlement submitted on Chehab's affidavit, though the pages are set in a different order (NYSCEF Doc No. 219, Brian aff, exhibit F; NYSCEF Doc No. 292, Chehab aff, exhibit J). The only difference between the March PPMs submitted with Brian's and Chehab's affidavits is the amount of the investment, not the material terms of the agreement itself (NYSCEF Doc No. 214 at 24; NYSCEF Doc No. 283, Chehab aff, exhibit A at 24). Significantly, the EHG Defendants have not challenged whether plaintiffs' version is inaccurate in reply. Because valid contracts govern the parties' dispute, the twenty-sixth cause of action against the EHG Defendants and Carr is dismissed.
Accordingly, it is hereby
ORDERED that the motion brought by defendants Tom Kent and Custodial Account and Transaction Services LLC to dismiss the complaint (motion sequence no. 012) is granted to the extent that the complaint is dismissed as against defendant Tom Kent, and the balance of the motion is otherwise denied; and it is further
ORDERED that the motion brought by defendants Brian Lillie, Enterprise Holdings Group Ltd. a/k/a Enterprise Holdings Group, Ltd., Enterprise Holdings Group LLC, Tracy Lillie a/k/a Tracy Kay Lillie, EHG Capital Management Ltd., EHG Equities Ltd., Lilliham Holdings Limited, eCreative Group Inc., and Three Wide Media LLC to dismiss the complaint (motion sequence no. 013) is granted to the extent of:
1. Dismissing the complaint against defendants Brian Lillie, Tracy Lillie a/k/a Tracy Kay Lillie, EHG Equities Ltd., Lilliham Holdings Limited, eCreative Group Inc., and Three Wide Media LLC; and
2. Dismissing the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twenty-sixth causes of action against defendants Enterprise Holdings Group Ltd. a/k/a Enterprise Holdings Group, Ltd., Enterprise Holdings Group LLC, and EHG Capital Management Ltd.; and
3. The balance of the motion is otherwise denied; and it is further
ORDERED that the motion brought by defendant Tim Carr to dismiss the complaint (motion sequence no. 014) is granted; and it is further
ORDERED that the complaint is dismissed in its entirety against defendants Brian Lillie, Tracy Lillie a/k/a Tracy Kay Lillie, EHG Equities Ltd., Lilliham Holdings Limited, eCreative Group Inc., Three Wide Media LLC, Tim Carr, and Tom Kent, with costs and disbursements to said defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendants; and it is further
ORDERED that the action is severed and continued against the remaining defendants; and it is further
ORDERED that defendants Enterprise Holdings Group Ltd. a/k/a Enterprise Holdings Group, Ltd., Enterprise Holdings Group LLC, and EHG Capital Management Ltd. shall serve and file an answer to the amended complaint within 20 days after service of this order with written notice of entry; and it is further
ORDERED that counsel are directed to appear for a virtual preliminary conference on Microsoft TEAMS on October 3, 2023, at 10:30 a.m.
DATE 08/07/2023
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:The complaint does not allege whether the July return was paid.

Footnote 2:The complaint does not specifically allege that Cioffi or Carr undercapitalized Gulf.

Footnote 3:
 Vanaki and Michael have not answered or appeared in this action, and affidavits reflecting service of process upon them have not been filed on NYSCEF.

Footnote 4:Kent has sought to vacate CAT's default (NYSCEF Doc No. 369). A notice of motion (see CPLR 2221), however, has not been filed by an attorney representing CAT.

Footnote 5:Ordinarily, "[t]he question of whether corporate veils should be pierced will be determined by the laws of each [corporation]'s state of incorporation" (Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V., 205 AD3d 520, 521 [1st Dept 2022], quoting Flame S.A. v Worldlink Intl. Holding, 107 AD3d 436, 438 [1st Dept 2013], lv denied 22 NY3d 855 [2013]). According to the complaint, the corporate defendants are organized under the laws of Bermuda, the United Kingdom, Florida, Iowa, Nevada or North Carolina. Plaintiffs, however, invoke New York law. Accordingly, the court shall apply New York law.

Footnote 6:The EHG Defendants and plaintiffs cite New York law, though none of the corporate defendants are incorporated or organized under New York law.

Footnote 7:The court presumes that reference to the "September 2015 PPM" in the complaint is an error.